[S.F. No. 25021. Sept. 19, 1988.]

COUNTY OF ALAMEDA, Plaintiff and Respondent, v.
BOARD OF RETIREMENT OF THE ALAMEDA COUNTY
EMPLOYEES' RETIREMENT ASSOCIATION, Defendant and
Respondent;
ROGER L. CARNES, Real Party in Interest and Appellant.

**COUNSEL**

Richard J. Moore, County Counsel, Douglas Hickling, Assistant County Counsel, and George M. Braue, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Lowell A. Airola and Airola, Williams & Dietrich for Real Party in Interest and Appellant.

## OPINION

**EAGLESON, J.—** In this case, we are called upon to determine the appropriate standard of review to be applied by the superior court when a county seeks a writ of mandate (Code Civ. Proc., § 1094.5) to review a decision of its retirement board granting a service-connected disability pension to a deputy sheriff.

We conclude that the independent judgment test applies. When a local government entity is required to contribute to an employee benefit fund of the type involved here (Gov. Code, § 31450 et seq.), an administrative award of those benefits warrants such review under *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770 [163 Cal.Rptr. 619, 608 P.2d 707].

### FACTS

The undisputed facts concern real party in interest, Roger L. Carnes (Carnes), who was initially employed as a deputy sheriff by plaintiff County of Alameda (County) in 1969. As a result of his employment, Carnes became a member of the Alameda County Employees' Retirement Association.

In 1979, Carnes, who was then about 35 years old, applied for a service-connected disability retirement with defendant, Board of Retirement of the Alameda County Employees' Retirement Association (Board). In his application, he claimed that various work-related auto and slip-and-fall accidents injured his back, and required him to undergo surgery to remove a herniated disc. As a result of the surgery, Carnes assertedly could no longer perform the usual duties of a deputy sheriff.

The Board conducted a hearing at which both sides presented evidence on the issue of Carnes's alleged permanent incapacitation. Carnes testified that he was incapable of engaging in any strenuous physical activity, and could not perform certain sheriff's duties, such as those related to pursuing and subduing suspects. Although he recovered well from the surgery, he felt compelled to accept a sales job with another employer which involved only "light" physical work. He further testified that persistent back pain and weakness required him to forego such recreational activities as skiing, racquetball, horseback riding, and performing daily feed-and-care tasks at his horse-boarding business.

The one expert medical opinion introduced on Carnes's behalf was provided by Dr. Indeck. He stated that no medical disability prevented Carnes

from performing any of the physical duties listed in the official job description for deputy sheriff. In Dr. Indeck's opinion, Carnes was indeed incapacitated, but only in the sense that repeated lifting or bending, or a strenuous altercation, might cause additional stress or strain to the back.

County's evidence consisted, in part, of a film taken by a private investigator four days before the hearing. The film (as well as testimony by the investigator) depicted Carnes shoveling horse manure at his stables, and bending and moving with apparent ease.

County also introduced the testimony of Dr. Powlan, an orthopedic surgeon who had examined Carnes in person and studied his X-rays. Dr. Powlan stated that Carnes had "recovered very well" from a "cleanly done" operation. There were no signs of any ongoing or fresh irritation in the injured area. Dr. Powlan further opined that the deputy sheriff's job would have no more harmful physical effect on Carnes's back than his new job as a salesman.

A third and final medical opinion was given by Dr. Handon, the Board's independent medical advisor. He reviewed Carnes's medical history and concluded that "disability is totally unproven on an objective ground." Dr. Handon insisted that Carnes had recovered well from his surgery and could physically perform his duties as a deputy sheriff.

After the hearing, the Board concluded that Carnes was "permanently incapacitated for the performance of the usual duties of the deputy sheriff position within the meaning of the retirement law of 1937 (Gov[.] Code, § 31724)," and that his "incapacitation results from injury arising out of [and] occurring in the course of his employment."

County petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1094.5) to compel the Board to set aside its decision and enter an order denying Carnes's application for disability retirement. Following a hearing, the court independently reviewed and weighed the evidence in the administrative record, and granted the requested relief.

On appeal, Carnes argued that the trial court should have limited itself to determining whether the Board's decision was supported by substantial evidence. The Court of Appeal disagreed and affirmed the judgment. It concluded that the trial court had properly exercised its independent judgment under our decision in *Interstate Brands, supra,* 26 Cal.3d at page 770, and had made findings which were supported by substantial evidence.

## DISCUSSION

■ Code of Civil Procedure section 1094.5, subdivision (c), provides alternative standards for judicial review of the evidentiary basis of an administrative agency's adjudicatory decision: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

The foregoing language does not attempt to specify which cases are reviewable under the "weight of the evidence" and "substantial evidence" standards. The sole legislative guidance on this point is that the courts may independently weigh the evidence whenever "authorized by law" to do so. In using this language, the Legislature simply intended to codify existing rules governing the applicable standard of judicial review. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 343 [156 Cal.Rptr. 1, 595 P.2d 579].) In other words, the courts are left with the ultimate task of deciding which cases warrant such review. (*Unterthiner* v. *Desert Hospital Dist.* (1983) 33 Cal.3d 285, 293-294 [188 Cal.Rptr. 590, 656 P.2d 554]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 140 [93 Cal.Rptr. 234, 481 P.2d 242].)

In *Bixby, supra,* 4 Cal.3d at pages 138-140, we approached this task by observing that the independent judgment test had its historical roots in the notion that agencies lacking in judicial power are precluded from performing judicial functions. We recognized that the essence of this function is to make binding determinations on conflicting evidence, particularly where constitutional liberty and property interests are involved. (*Ibid.*) ■ ■■■
■ To uphold such a decision by a "nonjudicial" agency, without allowing the court to reweigh the evidence, would offend separation of powers principles and then-existing constitutional constraints on the allocation of the state's judicial power.[1] (See *Strumsky* v. *San Diego County Employees*

---

[1] At the time of our decision in *Bixby, supra,* 4 Cal.3d at page 130, former provisions of article VI, section 1 of the California Constitution had long been interpreted as precluding the Legislature from vesting judicial powers in agencies of statewide jurisdiction. Their decisions, therefore, were not reviewable by certiorari, which lies only to review judicial action and which contemplates that findings based on substantially conflicting evidence are binding on the reviewing court. (See *Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557, 559 [59 P.2d 119].) Under this view, however, local agencies and state agencies of purely local jurisdiction did not operate under similar constraints. Thus, their factual findings were entitled to greater deference. (*Strumsky, supra,* 11 Cal.3d at pp. 37-38.) As noted in *Strumsky,* an amendment to article VI, section 1 in 1950, has obviated the need to continue distinguishing

*Retirement Assn.* (1974) 11 Cal.3d 28, 34-44 [112 Cal.Rptr. 805, 520 P.2d 29].)

Accordingly, as we noted in *Bixby, supra,* 4 Cal.3d at pages 138-140, the independent judgment test was first applied to administrative adjudications which threatened to deprive the aggrieved party of a constitutionally protected property right. In *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 84-85 [87 P.2d 848], for example, this court held that professional licenses which had been administratively suspended or revoked were valuable property rights which warranted a judicial weighing of the evidence in order to afford due process of law. (See also, *Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831, 840 [123 P.2d 457].) However, decisions which merely affected the initial acquisition of such a right did not warrant similar attention. (*McDonough* v. *Goodcell* (1939) 13 Cal.2d 741, 752-753 [91 P.2d 1035, 123 A.L.R. 1205].)

*Bixby* acknowledged this heritage and concluded that independent judicial review is required whenever a "fundamental vested right" is at stake. (4 Cal.3d at p. 144.) We have interpreted this concept as including, but not being limited to, individual rights guaranteed under the due process and equal protection clauses of the state and federal Constitutions. (See *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 396-399 [188 Cal.Rptr. 891, 657 P.2d 383].) Our primary concern in *Bixby* was to provide "a doctrinal basis through which such review could be extended to 'decision[s] or class[es] of decisions' which, although not involving vested property rights in the traditional sense, nevertheless had [a significant] impact on the individual . . . ." (*Interstate Brands, supra,* 26 Cal.3d at p. 779; quoting *Bixby, supra,* 4 Cal.3d at p. 144.)

We have seen a steady expansion in the class of rights which fits this description. (See e.g., *Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at p. 398 [right to retain a driver's license]; *Frink* v. *Prod* (1982) 31 Cal.3d 166, 179 [181 Cal.Rptr. 893, 643 P.2d 476] [right of needy applicant to welfare benefits]; *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835, 844 [116 Cal.Rptr. 487] [right to continue developing property without complying with coastal development legislation].)

Of particular interest is *Interstate Brands, supra,* 26 Cal.3d at page 770, which extended the fundamental vested rights doctrine to an employer who

between "local" and "statewide" agencies. (*Id.* at pp. 41-44.) The independent judgment test is now available in mandate proceedings to review the adjudicatory decisions of both types of agencies, as long as a fundamental vested right of the aggrieved party is at stake. (*Id.* at pp. 44-45.)

sought review of an administrative decision rendering certain employees eligible for unemployment insurance benefits. The trial court exercised its independent judgment on the evidence and reversed the award. The Unemployment Insurance Appeals Board appealed, contending that this standard of review was limited under *Bixby, supra,* 4 Cal.3d at page 130, to cases involving important personal or economic rights of individuals. The employer, it was asserted, had no interest under the unemployment insurance system which similarly warranted independent scrutiny by the reviewing court.

In analyzing this argument, we noted that there was no reciprocity between the right of the employee to independent judicial review, and the right of the employer. Although the employees had a fundamental vested right in their eligibility-to-benefits determination, the employer could not also invoke the independent judgment test unless it could claim its own such right. (*Interstate Brands, supra,* 26 Cal.3d at pp. 780-781.)

Nonetheless, we found that the employer had a direct pecuniary interest in avoiding erroneous charges against its unemployment insurance reserve account. We emphasized that, under the applicable statutory scheme, the employer "is required by law to make contributions to the unemployment fund [citation]; that the rate of those contributions, expressed as a percentage of average base payroll, is based upon the ratio between its average base payroll and the net balance in its reserve account [citations]; and that . . . '[a]ny final decision of the administrative tribunal which awards benefits to a claimant has the effect of depleting an employer's reserve account [and may thereby adversely affect his rate of contributions]. . . .'" (*Interstate Brands, supra,* 26 Cal.3d at p. 781; quoting *Chrysler Corp.* v. *California Emp. etc. Com.* (1953) 116 Cal.App.2d 8, 14 [253 P.2d 68].)

■■■ The County Employees Retirement Law of 1937 is structured in an analogous fashion. (Gov. Code, § 31450 et seq.)[2] County is required to participate in the retirement system, which is funded by both County and employee-member contributions. (§§ 31580-31607, 31639-31639.85.) The Board, which is a separate legal entity, is responsible for managing the system. (§ 31520.) The Board's actuary periodically evaluates the mortality, service, and compensation experience of the members and their beneficiaries, as well as the assets and liabilities of the system. (§ 31453.) Based on the results of this survey, the Board recommends to the County's board of supervisors any changes that should be made in rates of interest, member contributions, and county and district appropriations. (*Ibid.*) If the board of supervisors fails to make sufficient appropriations to cover the cost

---

[2] All further statutory references are to the Government Code unless otherwise indicated.

of the Board's recommendations, the county auditor is required to transfer from any money available in any county treasury fund the amount which should have been appropriated by the board of supervisors. (§ 31584.)

Under this scheme, there are two ways in which County "pays into" the system. It does so by complying with the periodically readjusted rate of contribution (§§ 31453.5, 31454), and by funding any deficits in the system (§ 31454.5).

It is manifest that the "mortality, service, and compensation experience" of the system's participants will reflect an increase in the rate of successful service connected disability claims. (§ 31453.) Such early retirement awards also undoubtedly influence the overall "assets and liabilities" of the fund (*ibid.*), and may thereby alter the results of the actuarial survey conducted for that reporting period. Since any change in the actuarial outlook may affect future county and district appropriations, a public employer who is required to contribute to the system has a direct pecuniary interest in challenging these kinds of awards.

Accordingly, the only discernible difference between this case and *Interstate Brands, supra,* 26 Cal.3d at page 770, is the identity of the employer. However, we see no reason to establish a different rule here simply because the employer is public rather than private. Each case involves a statutory scheme which requires the employer to make certain benefit fund contributions. An award rendering the employee eligible for benefits under either scheme is likely to have the same effect on the employer's rate of contribution. To require a trial court to apply a different standard simply because two different employers are involved is to make a distinction which is neither required by law nor supported in reason. The purpose of the independent judgment test is to ensure that certain disputes receive a careful and judicious reevaluation of the evidence. A standard of review resting on the identity of the litigants, rather than the nature of their dispute, does nothing to further this purpose.

Such a distinction also would be indefensible from a practical standpoint. In particular, dissimilar treatment of employers for purposes of judicial review would lead to arbitrary and disparate treatment of employees. Under *Interstate Brands, supra,* 26 Cal.3d at page 770, the employee who prevails at the administrative level must undergo the rigorous scrutiny of independent judicial review if the award is challenged by a private employer. If we were to apply a different standard in an identical case involving a public employer, the employee would retain his or her favorable award as long as it survived the less exacting substantial evidence standard. This result interjects confusion into the proceedings and is absurd.

For the foregoing reasons, the Court of Appeal properly concluded that the independent judgment test had been correctly applied by the trial court. The Court of Appeal also properly observed that it was obligated to uphold the trial court's decision if the underlying findings were clearly supported by substantial evidence in the record. (See *Bixby, supra,* 4 Cal.3d 130, 143, fn. 10.) Since there was ample medical and documentary evidence supporting the trial court's finding that Carnes was not permanently incapacitated within the meaning of section 31724 (see *Harmon v. Board of Retirement* (1976) 62 Cal.App.3d 689, 694-696 [133 Cal.Rptr. 154]), that decision was correctly upheld on appeal.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Arguelles, J., and Kaufman, J., concurred.

**BROUSSARD, J.**—I dissent.

The ordinary rule applied in the United States in reviewing determinations of administrative agencies is the substantial evidence rule where the judiciary defers to the factual decisions of the administrators and upholds them unless the findings are unsupported by substantial evidence in the light of the whole record. California follows the national practice in some cases but in others it applies a unique rule where the trial court exercises its independent judgment, reweighing the evidence and making its own factual determinations. (See *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 831 [140 Cal.Rptr. 442, 567 P.2d 1162] (Clark, J., dis.).) As we shall see, although there have been numerous justifications offered for the independent judgment rule, *none* of them is applicable when it is a governmental agency rather than an individual which is seeking review of another governmental agency's decision. When the reason for the special rule is not present, we should refuse to apply it and instead should apply the ordinary substantial evidence rule.

Moreover, the practical effect of the filing of a petition for writ of mandate in cases subject to the independent judgment rule is to vacate the factual findings of the administrative agency. It makes no sense to permit one governmental agency, here the County of Alameda, to vacate the factual findings of an administrative agency, the board of retirement, by merely filing a petition when the Legislature has specified that it is the administrative agency that is to determine the factual issues and has not indicated that approval of the county is required.

Robert Carnes was initially employed by the County of Alameda as a deputy sheriff in 1969. As a result of several injuries he underwent back

surgery. He received workers' compensation benefits, including rehabilitation benefits. He applied for a disability retirement. After a hearing, the Board of Retirement of the Alameda County Employees' Retirement Association found that he was permanently incapacitated for the performance of the usual duties of the deputy sheriff position and that his incapacitation resulted from injury to his back and left leg arising out of and occurring in the course of his employment. The board granted a disability retirement. The county petitioned the superior court for a writ of mandate claiming that Carnes was not disabled. The county did not challenge the finding that his injuries were industrially related. The superior court concluded that the independent judgment rule applied, and that the weight of the evidence failed to show that he was disabled from performing the duties of a deputy sheriff. It granted mandate directing the board to vacate its decision. The Court of Appeal affirmed, concluding that it was proper for the trial judge to reweigh the evidence.

The association is established under the County Employees Retirement Law of 1937. (Gov. Code, § 31450 et seq.) As a deputy sheriff, Carnes was a member of the association. (Gov. Code, §§ 31469, 31469.3.) Four of the nine members of the retirement board are appointed by the board of supervisors, four are elected by the employees association, safety employees, and retired employees, and the ninth member is the county treasurer.

The county and the employees make contributions to the retirement fund which is administered by the board. Upon the basis of actuarial evaluation, the board recommends to the board of supervisors the amounts to be appropriated by the county and by districts and the rate of member contributions. The board of supervisors from time to time adjusts the rate of member contributions, the amounts to be appropriated, and amounts, if any, necessary to fund deficits. (Gov. Code, §§ 31453-31454.5.)

Government Code section 31725 provides: "Permanent incapacity for the performance of duty shall in all cases be determined by the board."

Historically, the independent judgment standard of review traces its heritage to *Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557 [59 P.2d 119]. That decision reasoned that article VI, section 1 of our state Constitution vested the judicial power in the courts and unless an agency was granted judicial powers by another constitutional provision it could not exercise judicial functions. As to those agencies not granted judicial powers by the Constitution, the question then arose as to when they were exercising judicial powers.

In *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 84-85 [87 P.2d 848], the court concluded that in a proceeding where the govern-

mental agency sought to revoke a professional license, the agency would be exercising judicial power if its factual findings on conflicting evidence were binding on the courts and that the courts reviewing such agency decision must exercise an independent judgment on the facts. In *Drummey* the court reasoned: " 'Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect with our multiplication of administrative agencies, is not one to be lightly regarded.' " (13 Cal.2d 75, 85 (quoting from *St. Joseph Stock Yards Co.* v. *United States* (1936) 298 U.S. 38, 52 [80 L.Ed. 1033, 1041, 56 S.Ct. 720]); see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 138 [93 Cal.Rptr. 234, 481 P.2d 242].)

*McDonough* v. *Goodcell* (1939) 13 Cal.2d 741, 752-753 [91 P.2d 1035, 123 A.L.R. 1205], limited the *Drummey* requirement of independent judgment review to cases of persons possessing "valuable property rights" and to cases where the order "if unlawful or otherwise unjustified from a judicial viewpoint, would be to deprive the aggrieved party of a constitutional right without due process of law." The court refused to apply the independent judgment standard of review to an order denying an application for a bail bond license. In *Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831, 844 [123 P.2d 457], the court, in discussing when independent judgment review is required so that an agency will not exercise judicial power, stated: "[I]t is *not* the fact-finding power alone that is involved in the present situation. It is the facts found plus the order based thereon depriving a person of a property right which is the full exercise of the judicial power." (Italics in original.)

Thus, prior to the adoption of Code of Civil Procedure section 1094.5 in 1945, the courts had developed as a constitutional doctrine the requirement that a court reviewing an adjudicatory determination for a governmental agency must exercise its independent judgment on the evidence in certain cases. The basis of the requirement was not that administrative agencies could not exercise fact-finding power alone but that the exercise of such power when individual rights of liberty and property were involved would constitute an exercise of the judicial power.

Under the constitutional doctrine a governmental agency, such as a county, may not invoke the independent judgment standard of review when it

seeks review of the adjudicatory decision of another governmental agency. Agencies and subdivisions of the state government do not have individual rights of liberty and property when considered in relation to the state and its other agencies and subdivisions. It follows that a state agency or subdivision does not exercise judicial power when it determines the rights of another state agency or subdivision pursuant to legislative command, and that independent judgment review is not required when the latter seeks judicial review.

Moreover, it is apparent that the practical concerns which gave rise to the independent judgment rule have no application to cases where a governmental agency seeks review of another governmental agency's decision. The practical concerns are that the bureaucracy established to advance valid governmental policy decisions will in carrying out those legislative determinations run roughshod over the individual's fundamental vested rights.

The provisions of Code of Civil Procedure section 1094.5 and the cases applying them also do not warrant independent judgment review. The section provides for both substantial evidence and independent judgment review. Although the Legislature on occasion has specified the appropriate standard of review in certain matters (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 342-346 [156 Cal.Rptr. 1, 595 P.2d 579]), in the absence of specification section 1094.5 leaves to the courts the determination of which standard of review shall be applied in a specific case. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 140.)

In the landmark case, *Bixby,* the court commenced its discussion of the appropriate standard of review to be applied by pointing out that under the separation-of-powers doctrine the judiciary, because of its independence and long tenure, probably can exert a more enduring and equitable influence in safeguarding fundamental constitutional rights than the other two branches of government which remain subject to the will of a contemporary and fluid majority. Recognizing the great growth of administrative bureaucracy, it was pointed out that the courts initially reacted "with the suspicion and fear that the burgeoning bureaucracy would endanger the prevailing concepts of individual rights," but that courts recognized that the new administrative tools were necessary to cope with new complexities. (4 Cal.3d at pp. 141-142.)

In balancing the need for administrative expertise and the rights of individuals, the court concluded that the determination of the appropriate standard of review must be made on a case-by-case basis. If "the right has been acquired by the individual and if the right is fundamental, the courts have held the loss of it is sufficiently vital to the individual to compel a full and

independent review. The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction." (4 Cal.3d at p. 144.)

Subsequent cases have likewise emphasized that the effect of the administrative decision on the individual is the basic concern in determining whether the independent judgment rule is applicable. For example, in *Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802, 821, the court stated: "As we made clear in *Bixby,* the basic consideration in determining the scope of judicial review to be afforded administrative decisions of an adjudicatory nature is *the importance of the affected right to the individual who stands in jeopardy of losing it.*" (Italics in the original.) (See also, e.g., *Frink* v. *Prod* (1982) 31 Cal.3d 166, 174 et seq. [181 Cal.Rptr. 893, 643 P.2d 476]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45 et seq. [112 Cal.Rptr. 805, 520 P.2d 29].)

It is apparent that when one governmental agency or subdivision seeks review of the decision of another governmental agency or subdivision, the basic consideration requiring independent judgment review is absent. The basic consideration is the importance to the individual of the affected right, and obviously governmental agencies and subdivisions are not individuals.

Moreover, the Legislature should be permitted to designate which of several governmental agencies should make the ultimate determination on a question common to them, and when the decision is made, it should be binding on all if supported by substantial evidence. If a de novo review is permitted, it is apparent that the decision of the designated agency is entitled to no greater weight than the others. Thus, if the independent judgment rule were to be applied to the retirement board's decision in the instant case upon the county's petition for writ of mandate, it would mean that the superior court would decide the issues, including the factual issues, notwithstanding that the Legislature did not direct the county counsel to decide whether the pension should be granted and the employee retired but expressly stated that the board should decide. (Gov. Code, § 31725.)

Only four appellate cases have been found where a governmental official, agency, or subdivision sought review of a decision of another governmental agency which was not given judicial powers by the Constitution. Three of the four cases applied the substantial evidence rule, and while the fourth held that the independent judgment rule was applicable, it is distinguishable. In *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23 [112 Cal.Rptr. 872], the court concluded that a hospital district did not have a fundamental vested right warranting independent judgment review of a decision of the Fair Employment Practice Commis-

sion on the ground that the hospital's right to establish employment practices and procedures was not a fundamental vested right. The court commented on the hospital's status as a public agency: "[The hospital's] vested right argument is rendered even more tenuous by the fact that it is a public agency (a local hospital district)."

In two cases, sheriffs sought review of decisions of county civil service commissions reducing the discipline imposed for misconduct. In both cases, it was held that the substantial evidence rule was applicable. (*Carpenter* v. *Civil Service Com.* (1985) 173 Cal.App.3d 446, 450-452 [220 Cal.Rptr. 407]; *Lowe* v. *Civil Service Com.* (1985) 164 Cal.App.3d 667, 674-675 [210 Cal.Rptr. 673].) The courts reasoned that the employer did not have a vested fundamental right to establish practices and procedures and to impose conditions of employment free of reasonable governmental rules and regulations.

The independent judgment rule was held applicable in the fourth case, where a municipal water district sought review of a decision of the Division of Water Resources of the Department of Public Works. (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 105-106 [280 P.2d 1].) However, in that case a private party joined with the district in seeking review claiming the same error, and the court did not consider what would be the proper rule if only the district had sought review or if the private party and the district were making different contentions.

None of the cases cited above suggests reasons why the interests of governmental agencies require independent judgment review. The fact that employees have a fundamental vested right in their retirement benefits and thus are entitled to independent judgment review of adverse administrative decisions does not furnish a basis to conclude that the county is entitled to such review. Reciprocity does not apply; the litigant seeking independent judgment review must do so on the basis of its own rights. (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780-781 [163 Cal.Rptr. 619, 608 P.2d 707]; *Sierra Club* v. *California Coastal Zone Conservation Com.* (1976) 58 Cal.App.3d 149, 155-156 [129 Cal.Rptr. 743].)

The majority assert that the county has a pecuniary interest in the retirement funds analogous to that of a private employer's interest in avoiding improper charges to its unemployment insurance reserve account and that since under *Interstate Brands* v. *Unemployment Ins. Appeals Bd., supra,* 26 Cal.3d 770, 780, the private employer's interest is fundamental and vested the county's is also.

The majority's analysis fails for several reasons. The county's interest is substantially different because it has multiple interests involved here. If the

county prevails in the mandamus proceeding to review the board's determination that the deputy sheriff is disabled, the sheriff must reinstate him to his old job. The issue is substantial because the board held that Deputy Carnes was disabled on September 21, 1981. After that he could not work as a deputy sheriff. The superior court did not issue the writ of mandate until May 24, 1984. While error by the board may warrant the belated setting aside of the board's decision, setting aside the decision is not justified when it is supported by substantial evidence and cannot be said to be erroneous. (The parties have not briefed the issue whether the deputy is entitled to backpay and seniority benefits for the period between the board's decision and the superior court judgment.)

More importantly, the reasoning of *Interstate Brands, supra,* 26 Cal.3d 770, is not applicable where, as here, it is a governmental agency that is seeking review. After reviewing numerous cases, the court stated: "As the foregoing summary demonstrates, we believe, our concern in the *Bixby* case was not directed toward restricting or withdrawing the availability of independent review in 'decision[s] or class[es] of decisions' as to which such availability had been previously established. Rather our concern was directed toward providing a doctrinal basis through which such review could be extended to 'decision[s] or class[es] of decisions' which, although not involving vested property rights in the traditional sense, nevertheless had an impact on the individual 'sufficiently vital . . . to compel a full and independent review' by the court.[5] ([4 Cal.3d] at p. 144.) It was in this spirit, then, that we said: 'In determining whether the right is fundamental the courts do not *alone* weigh the economic aspect of it, but the effect of it in *human* terms and the importance of it to the *individual* in the life situation.' (*Id.,* italics added.) In assessing the right there before us, however, we found *neither* an economic dimension of the kind theretofore considered requisite to independent review *nor* a *human* dimension of the type which we sought in our opinion to emphasize. (See especially 4 Cal.3d at pp. 141-143.)" (*Interstate Brands* v. *Unemployment Ins. Appeals Bd., supra,* 26 Cal.3d at p. 779, italics added.)

The instant case meets neither of the tests enunciated in *Interstate Brands.* Unlike the employer's right to independent judgment review estab-

---

"[5] The relationship between 'vestedness' in the traditional sense and 'fundamentalness' in the *Bixby* sense is illuminated by a little-noted passage of the opinion which states: '[I]n determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is "vested," that is, already possessed by the individual.' (4 Cal.3d at p. 146.) Thus it could truly be said that the search for 'vestedness' and the search for 'fundamentalness' are one and the same. The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power. (See and cf. *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-45 [112 Cal.Rptr. 805, 520 P.2d 29].)"

lished in *Chrysler Corp.* v. *California Emp. etc. Com.* (1953) 116 Cal.App.2d 8, 14-15 [253 P.2d 68], decided 18 years prior to *Bixby,* the right of a governmental agency to independent judgment review has never been established until today, 17 years after *Bixby.* Further, since we are concerned with the governmental interest, we are not concerned with the effect of the right in "human" terms and its importance to the "individual" in the life situation. Charges to a private employer's unemployment reserve account may result in substantial increases in his employment taxes and may have substantial effects on his business, and the effect of the right involved in human terms and upon the individual are apparent. The same cannot be said of the governmental agency. Since neither of the tests enunciated in *Interstate Brands* has been met, the very case relied upon by the majority fails to support them.

It is true as the majority point out (maj. opn. at p. 909) that a decision to pay Deputy Carnes's disability pension will have economic consequences to the retirement fund and may require county contribution to offset it. But governmental agencies without a hearing are regularly paying claims based on their factual determinations that the money is due, and those payments require the agency to either seek other funds or forgo other expenditures.

Under the constitutional doctrine, the statute, and the extensive case law, there is no valid reason to apply independent judgment review to the board's determination that Deputy Carnes is disabled from performing the job as a deputy sheriff. Absence of any justification to apply independent judgment review precludes its application.

There is substantial evidence to support the board's determination, evidence that a return to performance of the usual duties of that position will quickly result in grave injury in view of the disc surgery and his remaining injuries. Although there is conflicting evidence, the trial court should have applied substantial evidence review and upheld the board's determination.

The judgment of the Court of Appeal should be reversed.

**MOSK, J.**—I agree with Justice Broussard's dissent. I write separately only to express my disenchantment with extensive litigation between two agencies of the same governmental entity.

Here we have the County of Alameda, acting through its board of supervisors and county counsel, suing the County of Alameda Board of Retirement. Not only is such an internecine lawsuit unseemly, it has occupied the time and resources of a trial court, an intermediate appellate court, and now this court, not to mention the legal talent involved.

Certainly there must have been a simpler alternative method of settling a dispute between two county departments. At the outset counsel should have taken steps to have the problem resolved without the necessity of lengthy litigation that has now burdened the judicial system for more than five years.

In short, the courts have important issues to decide. They should not be required to resolve a local turf controversy.