[No. D056676. Fourth Dist., Div. One. Dec. 21, 2011.]

RANGANATH SARASWATI, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

## COUNSEL

Law Offices of Michael R. Marrinan and Michael R. Marrinan for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, and David G. Axtmann, Deputy County Counsel, for Defendant and Respondent.

## OPINION

IRION, J.—Ranganath Saraswati appeals from the trial court's judgment denying his petition for writ of administrative mandamus against the County of San Diego (the County) challenging the County's determination in an administrative hearing that the child abuse allegations made against Saraswati in 2006 were inconclusive rather than unfounded. As we will explain, we

conclude that the trial court applied the wrong standard in reviewing the County's determination, and accordingly we remand this matter to the trial court to apply the correct standard.

I

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2006, Saraswati was involved in a contentious custody dispute over his then five-year-old daughter (the Child) after the dissolution of his marriage to the Child's mother (Mother).

On April 18, 2006, several days before a scheduled April 24, 2006 hearing to consider sanctions against Mother for violations of a custody order, Mother took the Child to the emergency room, stating that the day before, while being bathed, the Child told her that Saraswati had inserted his fingers and his toothbrush into her vagina and anus. According to the report of the County's investigating social worker, while the Child was playing with a teddy bear in the emergency room lobby, she said to the teddy bear, " 'I'll give you a bath but not like daddy does' " and then shoved her fingers toward the bear's private parts. The Child was evaluated the next day in a sexual abuse screening. The Child told the interviewer that Saraswati inserts his electric toothbrush in her vagina and anus and then brushes his teeth with the toothbrush. In a meeting with the investigating social worker on May 4, 2006, the Child repeated the claim about the toothbrush and also added that Saraswati put dental floss into her vagina and then used it on his teeth.

In addition to the sexual abuse allegations, the Child stated that Saraswati touches, hits or pinches her when she is "in trouble" and has left bruises. Mother stated that the Child told her that Saraswati had plucked the Child's eyelashes when she did not tell him information about Mother and that Saraswati had twisted the Child's arm.

The police searched Saraswati's home and conducted DNA testing on his toothbrushes but found no evidence of the Child's DNA. Further, although the record does not contain the relevant medical report, it appears that a physical examination of the Child found no evidence of abuse. The police referred the case to the district attorney, but charges were not filed against Saraswati. When interviewed by the investigating social worker, Saraswati denied sexually abusing the Child and denied plucking her eyelashes or twisting her arm.

The investigating social worker closed the child abuse referral, concluding that it was inconclusive whether any sexual, physical or emotional abuse had occurred.

Based on the terminology used in the Child Abuse and Neglect Reporting Act. (Pen. Code, § 11164 et seq.) (the CANRA), an investigation of child abuse may result in a report with one of three possible findings: unfounded, substantiated or inconclusive. An " '[u]nfounded report' means a report that is determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect . . . ." (*Id.*, § 11165.12, subd. (a).) A " '[s]ubstantiated report' means a report that is determined by the investigator who conducted the investigation to constitute child abuse or neglect . . . based upon evidence that makes it more likely than not that child abuse or neglect . . . occurred." (*Id.*, § 11165.12, subd. (b).) An " '[i]nconclusive report' means a report that is determined by the investigator who conducted the investigation not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (*Id.*, § 11165.12, subd. (c).)

According to the version of the CANRA in effect during the relevant time period, a county welfare department was required by statute to report all inconclusive and all substantiated findings of child abuse to Child Abuse Central Index (CACI) maintained by California's Department of Justice (DOJ). (Pen. Code, §§ 11169, 11165.9.)[1] Because the investigating social worker concluded that the abuse allegations against Saraswati were inconclusive, the County's Health and Human Services Agency, Child Welfare Services (CWS) forwarded a report of the inconclusive determination to the CACI. As required by statute (Pen. Code, § 11169, subd. (b)), the County sent Saraswati a notice informing him that it had forwarded the report to the CACI.

Saraswati sought administrative review by the County.[2] A grievance officer from the County's Department of Justice Hearing Unit held a hearing on

---

[1] The CACI consists of an index of all reports of child abuse and severe neglect submitted to the DOJ pursuant to the CANRA under Penal Code section 11169. (*Id.*, § 11170, subd. (a).) In maintaining the CACI, the DOJ acts as a repository of the reports (*ibid.*), and the CANRA contains specific provisions setting forth the limited categories of persons who have access to the CACI. (Pen. Code, § 11170, subds. (b)–(e).)

[2] Saraswati states that he originally sent a letter to the County in 2006, seeking review of the social worker's "inconclusive" determination, and the County's DOJ review committee notified Saraswati in December 2006 that the determination would remain "inconclusive." Apparently—as the parties' briefing in the trial court explains—there was more than one referral number relating to the abuse allegations, and Saraswati's original letter cited a referral number that had not been reported to the CACI. Unaware of that fact, Saraswati filed a petition for writ of mandate in the superior court in January 2007, seeking judicial review of the County's December 2006 decision. When Saraswati learned that he had cited the wrong referral number, he sent a letter to the County citing the correct referral number and seeking review of the

October 8, 2008, at which she considered documentary evidence and the live testimony of witnesses called by Saraswati.

At the hearing, Emily McCutchan testified that in May 2006, shortly after the abuse allegations, she became the Child's therapist for weekly sessions. McCutchan testified that at their first meeting, the Child spontaneously described the sexual abuse at issue in this case, and the Child appeared to be giving a rehearsed speech. Over the course of her therapy sessions with the Child, McCutchan came to the conclusion that the abuse allegations at issue here were untrue, and that the Child had been coached to declare that she had been sexually abused. In part, McCutchan reached this conclusion because in October 2006 the Child told her that Mother wanted the Child to state that Saraswati touched the Child's private parts, as Mother wanted to spend more time with the Child. However, the Child did not ever specifically recant the abuse allegations made in April 2006 that are at issue here. McCutchan also recounted one instance during the therapy sessions when Mother told the child to tell McCutchan that Saraswati touched her private parts, and the child said, "No, no, no. That was a long time ago," and she started to cry.

The Child's attorney in the family court proceedings, William Benjamin, testified that when he was appointed in 2006, he was made aware that there had been allegations of physical and sexual abuse. On his first meeting with the Child, she spontaneously told him about Saraswati's abuse in an upbeat and happy manner while jumping on her bed. Benjamin did not otherwise discuss the abuse allegations with the Child, but based on the happy manner in which the Child reported the abuse, his interactions with the Mother, and his observation of the appropriate and affectionate relationship that Saraswati had with the Child, he reached the conclusion that the abuse allegations were not true and that the Child had been coached to report them. The Child never made a statement to Benjamin recanting the abuse allegations.

Saraswati testified at the hearing that the abuse allegations were false, and that he took a polygraph test, which concluded that he was truthful in denying that he inserted anything into the child's vagina or engaged in sexual activity with her. Saraswati explained the state of the family court proceedings at the time of the abuse allegations and the subsequent developments restricting Mother's custody for a period of time and giving him primary physical custody of the Child. According to Saraswati, who has a Ph.D. in materials engineering, he has previously worked as a professor and seeks to do so again, but he is afraid that if he applies for teaching job at a college, his potential employer will find out about the listing on the CACI when doing a

social worker's "inconclusive" determination. By the time that the County considered Saraswati's request for review, it had adopted a different review procedure, involving a grievance hearing presided over by a grievance officer.

background check.[3] Further, he is upset knowing that he is listed in the CACI with the Child "as a victim and me as a perpetrator."

The exhibits that Saraswati submitted at the hearing consisted, in part, of various filings in the family court proceedings, letters of reference from persons attesting to Saraswati's character and his relationship with the Child, and results of the polygraph examination.

On January 5, 2009, the County issued a decision upholding the original determination of "inconclusive." The grievance officer's recommendation, which was approved by CWS's director (the Director), extensively reviewed the relevant evidence, pointing out that the Child had never recanted the original abuse disclosures, and that therefore, "the evidence, testimony, and opinions regarding alleged coaching and the current relationship between father and child . . . do[] not change the certainty, or the possible validity of [the Child's] original statements."

In April 2009, Saraswati filed a petition for writ of mandate against the County seeking review and reversal of County's decision. Specifically, he sought an order "commanding County . . . to categorize the abuse allegation . . . as 'unfounded' and accordingly notify the [DOJ] that the report of child abuse . . . has been subsequently determined to be unfounded, as provided in Penal Code [section] 11169[, subdivision] (a)."[4] (Some capitalization omitted.)

Saraswati filed a memorandum of points and authorities in support of his petition, in which he argued (1) the County's determination that the abuse allegations were "inconclusive" was not supported by the evidence and (2) the County's administrative review procedure did not afford him due process because it lacked a standard of proof for the Director and the grievance officer to apply. In support of the due process argument, Saraswati submitted excerpts from depositions of the Director and the grievance officer that were taken in August 2009 in a related federal court action.

After requesting supplemental briefing from the parties on the standard of review that it should apply in reviewing the County's determination, the trial court ruled that the substantial evidence standard of review applied, and

---

[3] Saraswati has not identified any statutory provision that would give college administrators access to the CACI when considering a candidate for employment, and our review of the CANRA reveals no such provision. (See Pen. Code, § 11170, subds. (b)–(e).)

[4] The 2009 petition for writ of mandate was consolidated with the petition for writ of mandate that Saraswati filed in 2007. However, as a practical matter, the trial court adjudicated the second petition, as that petition sought relief regarding the report that was actually sent to the DOJ.

under that standard, sufficient evidence supported the County's finding that it was "inconclusive" whether the alleged abuse occurred. During the hearing on the petition for writ of mandate, the trial court commented that if it had determined an independent standard of review applied, it would have ruled in Saraswati's favor, rather than against him. The trial court sustained the County's evidentiary objections to the excerpts from the depositions of the Director and the grievance officer, but did not expressly address Saraswati's argument that the County's administrative review procedures did not comport with the requirements of due process.

## II

## DISCUSSION

Saraswati contends that the trial court erred because (1) it should have applied an independent standard of review—rather than a substantial evidence standard—when reviewing the County's determination that it was inconclusive whether abuse occurred and (2) even under a substantial evidence standard, insufficient evidence supports the County's determination. Saraswati also continues to advance his argument that the County's administrative review procedure did not afford him due process because it lacked a standard of proof, and he challenges the trial court's evidentiary ruling sustaining the County's objection to the deposition testimony submitted in support of that argument.

### A. *The County's Mootness Contention*

As an initial matter, we address the County's contention that due to a recent amendment to the CANRA, this dispute has become moot.[5]

Effective January 1, 2012, the CANRA will be amended to provide that only reports of child abuse investigations reaching "substantiated" determinations shall be forwarded to and included on the CACI. (Stats. 2011, ch. 468.) As relevant here, according to the CANRA, as amended, "[o]nly information from reports that are reported as substantiated shall be filed . . . and all other determinations shall be removed from the central list" (Pen. Code, § 11170, subd. (a)(3), as amended by Stats. 2011, ch. 468, § 3.5), and "[t]he index shall be continually updated by the department and shall not contain any reports that are determined to be not substantiated." (Pen. Code, § 11170, subd. (a)(1), as amended by Stats. 2011, ch. 468, § 3.5.) Based on these provisions, the DOJ will be required as of January 1, 2012, to remove from

---

[5] We have obtained and considered supplemental briefing from the parties on the County's mootness contention.

the CACI the County's report at issue, which determined that the abuse allegations against Saraswati were "inconclusive."

■ The County argues that the amendments to the CANRA afford Saraswati the relief that he was seeking, namely removal from the CACI of the County's report on the abuse allegations. The County contends that no effective relief can be granted to Saraswati that he will not already obtain as a result of the statutory amendment and that therefore this dispute is moot. The County supports its argument with case law establishing that "[a] case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [92 Cal.Rptr.2d 268].) " ' " '[W]hen, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " [Citations.]' " (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 120–121 [10 Cal.Rptr.3d 121].)

Saraswati contends that this dispute is not moot for two reasons. First, he contends that despite the statutory amendment, "there is no guarantee that [his name] will be removed from the [CACI], or when it will be removed," and that "[a]s long as [his] name remains in the CACI, this appeal cannot be considered moot." Second, Saraswati states that although one reason he sought an order requiring the County to change its determination from "inconclusive" to "unfounded" was to obtain removal of his name from the CACI, he also seeks an order requiring the County to change its determination so that the County's *own* files will not reflect an "inconclusive" finding. He argues that regardless of the amendment to CANRA, without an order from a court requiring the County to change its finding to unfounded, "[t]he [County] files showing an 'inconclusive' finding of child abuse by Dr. Saraswati would remain, presumably forever."

We conclude that this matter is not moot on the first ground identified by Saraswati. The amended version of the CANRA has not yet gone into effect, and Saraswati's name still appears on the CACI. Even though the amended version of the CANRA will go into effect on January 1, 2012, the County has not established that the DOJ will timely remove all inconclusive reports— including Saraswati's—from the CACI. Thus, there remains a possibility that relief obtained through this proceeding will afford a more timely remedy to

Saraswati than if he waits for the DOJ to remove his name under the amended version of the CANRA.[6] We will therefore proceed to determine the issues presented.

### B. *The Trial Court Should Have Exercised Independent Judgment Review*

In our review of the trial court's decision, the threshold question is whether the trial court correctly determined that it should review the County's determination under a substantial evidence standard of review rather than exercising its independent judgment on the evidence.

"Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved. [Citation.] If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. [Citations.] The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings. [Citation.] If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence." (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313 [99 Cal.Rptr.3d 199] (*Wences*).) Therefore, if the County's determination of "inconclusive" rather than "unfounded" on the abuse allegations against Saraswati substantially affects a fundamental vested right, the trial court reviews the County's determination by applying an independent judgment standard of review.[7] Otherwise, a substantial evidence standard of review is appropriate.

■ "The courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review." (*Bixby, supra,* 4 Cal.3d at p. 144.) A right may be deemed fundamental " 'on either or both of two

---

[6] We express no view on whether this action would be saved from mootness solely on the ground that the County's files contain an "inconclusive" determination on the abuse allegations. We note also that if, after remand to the trial court, the County obtains information that DOJ has in fact removed Saraswati's name from the CACI under the amended version of the CANRA, the County may renew its mootness argument with the trial court.

[7] When a trial court has applied an independent judgment standard of review of an administrative decision, "an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242] (*Bixby*).)

bases: (1) the character and quality of its economic aspect; [or] (2) the character and quality of its human aspect.' [Citation.] 'The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power. [Citation.]' [Citation.] 'In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.' " (*Wences, supra,* 177 Cal.App.4th at p. 313.) Further, a fundamental right is *vested* if it is "already possessed by the individual," such as in an employment context when "the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession." (*Bixby,* at p. 146.)

Fundamental vested rights are often found in the context of public employment rights, licensing decisions, public assistance benefits and land use. (See, e.g., *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652 [53 Cal.Rptr.2d 4] [termination of police officer's employment]; *Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 320–321 [90 Cal.Rptr.2d 277] [revocation of vehicle salesperson license]; *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383] [the right to retain a driver's license]; *Frink v. Prod* (1982) 31 Cal.3d 166, 179 [181 Cal.Rptr. 893, 643 P.2d 476] [the right to welfare benefits]; *Transcentury Properties, Inc. v. State of California* (1974) 41 Cal.App.3d 835, 844 [116 Cal.Rptr. 487] [the right to continue with property development]; *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] [public retirement benefits]; *301 Ocean Ave. Corp. v. Santa Monica Rent Control Bd.* (1991) 228 Cal.App.3d 1548, 1558 [279 Cal.Rptr. 636] [right to control private property].) However, our Supreme Court in *Bixby, supra,* 4 Cal.3d at page 145, footnote 12, suggested in dictum that fundamental vested rights may be involved when any of the "several fundamental liberties" that the United States Supreme Court identified in *Meyer v. Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 43 S.Ct. 625], are substantially affected, including "the right of the individual 'to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' " (*Bixby,* at p. 145, fn. 12.) According to our Supreme Court's summary of the applicable law, fundamental vested rights include, but are not limited to, "individual rights guaranteed under the due process and equal protection clauses of the state and federal Constitutions." (*County of Alameda v. Board of Retirement* (1988) 46 Cal.3d 902, 907 [251 Cal.Rptr. 267, 760 P.2d 464].)

Saraswati contends that the fundamental vested rights at issue in a challenge to the listing of a parent's name on the CACI as a result of an

inconclusive determination of a child abuse investigation are (1) the federal constitutional right to familial privacy and (2) the state constitutional right to informational privacy. For this argument, he relies on *Burt v. County of Orange* (2004) 120 Cal.App.4th 273 [15 Cal.Rptr.3d 373] (*Burt*), which addressed the issue of whether a parent listed on the CACI as a result of a determination that a child abuse allegation was substantiated or inconclusive must be afforded procedural due process through an administrative review procedure. (*Burt*, at pp. 285–286.) The procedural due process analysis in *Burt* depended on the identification of a " 'statutorily conferred benefit or interest of which [the parent] has been deprived to trigger procedural due process under the California Constitution.' " (*Burt*, at p. 284.)

In the course of its analysis, *Burt* concluded that both the federal right to familial privacy and the state constitutional right to informational privacy were implicated when a parent is listed on the CACI as a possible abuser of his or her child. (*Burt, supra*, 120 Cal.App.4th 273.) For its conclusion that the parent's familial privacy interests were implicated, *Burt* cited federal court cases dealing with child abuse records. (*Bohn v. County of Dakota* (8th Cir. 1985) 772 F.2d 1433, 1435–1436 [federal constitutional familial privacy right was implicated when parents were identified in county social services records as subjects of a substantiated report of child abuse]; *Hodge v. Jones* (4th Cir. 1994) 31 F.3d 157, 163–165 [discussing scope of federal constitutional familial privacy rights, but determining that those rights were not violated in a case where parents had been cleared of child abuse allegations, but the records pertaining to the abuse allegations remained in the agency's files].) For its conclusion that the state constitutional right to privacy was implicated, *Burt* referred to the right to " 'informational privacy' " described in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633], which includes a person's " 'interests in precluding the dissemination or misuse of sensitive and confidential information' " (*Burt*, at p. 285).

■ We conclude that the familial and informational privacy rights identified in *Burt* are sufficient to establish that there is substantial impact on fundamental vested rights when—as the result of an inconclusive determination of a child abuse allegation—a parent is listed on the CACI. Looking, as we must, to " 'the character and quality of [the] human aspect' " of the intrusion on the right at issue (*Wences, supra*, 177 Cal.App.4th at p. 313), we conclude that the right to familial and informational privacy impacted when a parent is publicly identified as a possible abuser of his or her child is " 'of sufficient significance to preclude its extinction or abridgement by a body lacking judicial power.' " (*Ibid.*, italics omitted.) Therefore, an independent judgment standard of review applies to Saraswati's challenge to the County's determination that it was inconclusive whether Saraswati abused the Child.

The trial court applied a substantial evidence standard of review, rather than applying its independent judgment in reviewing the County's determination. Therefore, we will remand this matter for the trial court to apply the correct standard of review.[8]

## C. *Saraswati's Argument That the County's Procedures Did Not Comply with Due Process Is Not Supported by the Record*

As another ground for reversal, Saraswati argues that the trial court should have determined that the procedure employed by the County in the administrative hearing did not comport with due process requirements because the grievance office and Director were not aware of the standard of proof that should be applied.[9] Saraswati explains that to comply with due process requirements, some administrative decisions, such as the revocation of a professional license, must be reached under a clear and convincing standard of proof, rather than the normally applicable preponderance of the evidence standard. (*Sandarg v. Dental Bd. of California* (2010) 184 Cal.App.4th 1434, 1441 [109 Cal.Rptr.3d 826].) According to Saraswati, the County's procedures were flawed because the decision makers did not consider which standard applied here and did not have any particular standard in mind. As we have explained, Saraswati supported his argument with excerpts from the deposition of the grievance officer and the Director, but the trial court sustained the County's objection to those documents because they were not in the administrative record.

■ Apart from the deposition excerpts, Saraswati has no evidence supporting his contention that the County failed to apply a standard of proof. The grievance officer's decision is silent on the matter, and "in the face of a silent record, we . . . apply the established principle that 'official duty has been regularly performed' (Evid. Code, § 664) and presume that the hearing officer . . . applied the correct standard of proof." (*Milligan v. Hearing Aid Dispensers Examining Com.* (1983) 142 Cal.App.3d 1002, 1008 [191 Cal.Rptr. 490] (*Milligan*).) Therefore, if we conclude that the trial court was within its

---

[8] Saraswati states that alternatively, instead of remanding for application of the correct standard, we should reverse and order that judgment be entered in his favor. According to Saraswati, that disposition would be proper because the trial court commented during the hearing that "if this were an independent judgment test, I would be siding with Mr. Saraswati, I would be finding in his favor." Having reviewed the record, we do not consider the trial court's comments during the hearing to constitute a thorough and considered application of the independent judgment standard, and the trial court did not set forth the alternative finding in its written order. We accordingly decline to adopt the alternative disposition suggested by Saraswati.

[9] Although we need not reach this issue, as we are reversing and remanding on other grounds, we exercise our discretion to address it in the interest of efficiency and for the guidance of the parties because Saraswati will likely assert the issue again on remand.

discretion to exclude the deposition excerpts, we must necessarily also conclude that Saraswati failed to establish his claim that the County's procedures violated due process requirements.

In reviewing the trial court's evidentiary ruling, we apply the rule that " 'evidence outside the administrative record generally is inadmissible to show that the agency has not proceeded in the manner required by law. [Citation.] However, extra-record evidence is admissible if the proponent shows that the evidence existed before the agency made its decision, but that it was impossible in the exercise of reasonable diligence to present it to the agency before the decision was made. [Citation.] Also, arguably, extra-record evidence may be admissible to show "agency misconduct." ' " (*Cadiz Land Co, v. Rail Cycle* (2000) 83 Cal.App.4th 74, 118 [99 Cal.Rptr.2d 378], italics omitted.) Here, the trial court was within its discretion to conclude that the evidence should be excluded because it was not in the administrative record, and because no exception applied in that the deposition excerpts did not exist before the administrative hearing, and Saraswati does not allege that any misconduct occurred.

Further, even were the deposition transcripts before us, we would conclude that Saraswati did not preserve the issue of whether the County applied the proper standard of proof because (1) he failed to raise the issue during proceedings before the grievance officer and (2) he did not challenge the fairness of the County's procedures in his administrative mandamus petition filed in the trial court. (*Milligan, supra,* 142 Cal.App.3d at p. 1008 [court would not consider claim by party seeking administrative mandamus that the agency did not apply a clear and convincing standard of proof when the party did not raise that issue before the administrative law judge and did not allege the issue in his petition for writ of administrative mandamus].) " 'The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body . . . .' " (*Ibid.*) If Saraswati was concerned that the County would apply the wrong standard of proof or would fail to explicitly focus on the standard of proof in making its determination, Saraswati should have raised that issue during the administrative hearing in the first instance. Further, to properly present a due process challenge in this case, Saraswati should have included that issue in his writ petition rather than raising it for the first time in his memorandum of points and authorities in the trial court. (*Haller v. Burbank Community Hospital Foundation* (1983) 149 Cal.App.3d 650, 659 [197 Cal.Rptr. 45] [in petition for administrative mandamus trial court could grant relief not explicitly prayed for *if* that relief was embraced within the issues presented by the petitioner].)

## DISPOSITION

The judgment is reversed, and this action is remanded for further proceedings consistent with this opinion. Costs are awarded to Saraswati.

Huffman, Acting P. J., and McDonald, J., concurred.