Filed 5/27/14  Zizzo v. Dept. of Housing and Community Development CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STACI ZIZZO,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT et al.,<br><br>        Defendants and Respondents. | D063563<br><br><br>(Super. Ct. No. 37-2011-00052025-CU-WM-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Law Offices of Alan L. Mohill and Alan L. Mohill for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, and James R. O'Day, Deputy County Counsel, for Defendants and Respondents.

Stacie Zizzo (Zizzo) appeals from an adverse judgment on her petition for writ of administrative mandamus against the Housing Authority of the County of San Diego (HACSD) and other parties, in which she challenged HACSD's termination of the rental

assistance provided to her through the "Section 8" program (42 U.S.C. § 1437f et seq.).[1] As we will explain, we conclude that Zizzo's appeal lacks merit, and we accordingly affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

HACSD administers the Section 8 rental assistance program in unincorporated areas of San Diego County.

In December 2009 Zizzo entered into an agreement with HACSD for Section 8 rental assistance for a house in Fallbrook (the House). The agreement listed Zizzo and her six children as the residents of the House. The applicable federal regulations provide for termination of Section 8 benefits based on, among other things, violations of "any family obligations under the program." (24 C.F.R. § 982.552(c)(1)(i).) Included in the program's "family obligations" are that "[t]he family must request . . . approval to add any other family member as an occupant of the unit" (24 C.F.R. § 982.551(h)(2)) and "the members of the household may not engage in drug-related criminal activity" (24 C.F.R. § 982.551(*l*)). Consistent with these regulations, Zizzo signed a statement acknowledging that her Section 8 benefits could be terminated if, among other things, "I or any household member engages in drug-related criminal activity," and "I or any household member allows unauthorized person(s) to reside/stay in the subsidized unit."

---

[1]    "The federal government, through the 'Section 8' program, provides financial assistance to low-income tenants. (42 U.S.C. § 1437f.)" (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1115.)

2

In August 2010, HACSD received information which led to an investigation of whether Zizzo had violated her family obligations under the Section 8 program based on (1) criminal drug-related activity at the House; and (2) the unauthorized residence of Zizzo's mother and brother, Deborah and Joseph Zizzo, at the House.[2]

HACSD conducted a search of Department of Motor Vehicle (DMV) records for Deborah and Joseph, both of which showed the House as their residence address. Further, HACSD located records in which Joseph had recently given the House as his address to probation officials. On August 18, 2010, a HACSD representative visited the House and found Joseph sleeping there.

HACSD also obtained police records showing that Joseph was arrested on the evening of August 10, 2010, inside the House for being under the influence of a controlled substance. According to the arresting officer's description in the police report, Joseph was an acknowledged heroin addict who admitted on August 10 to having used heroin the previous day, and based on Joseph's physical condition on August 10, he appeared to be under the influence of a controlled substance.[3]

---

[2]    Because we discuss several family members with the same last name as Zizzo, we identify those individuals by their first names for the sake of brevity, and we intend no disrespect by doing so.

[3]    Evidence was also presented in the course of the administrative proceedings of other criminal drug-related activity at the House.

First, HACSD obtained police reports concerning two juveniles who were detained in connection with the same investigation of drug activity at the House on August 10, 2010. However, based on an objection by counsel for Zizzo at the administrative hearing, the hearing officer did not consider the police reports regarding

On August 20, 2010, B.J. Glouden, an employee of HACSD, sent a notice to Zizzo stating that HACSD was currently reviewing Zizzo's Section 8 housing benefits. Glouden set a meeting with Zizzo on August 27 and asked Zizzo to bring verification of residency for Joseph and Deborah and information about any arrests and police activity at the House. At the meeting, Zizzo provided Deborah's cell phone bill and Deborah's bank statement, both of which showed a mailing address for a business in Temecula, not a residence. Zizzo also provided letters from (1) one of Deborah's daughters, stating that Deborah had been living with that daughter in Temecula since late 2008; and (2) someone claiming to have been Joseph's landlord at her property in Fallbrook since November 2009, stating that Joseph receives his mail at her post office box in Bonsall.

Glouden was not satisfied that the materials provided by Zizzo established that Deborah and Joseph were residing elsewhere, and she gave Zizzo an opportunity to provide additional materials showing that Deborah and Joseph did not reside with her. Glouden also requested that Deborah and Joseph file a change of address at the DMV and the post office using their current residence address rather than the House. At a follow-up meeting on September 3, 2010, the only additional materials Zizzo provided to Glouden were change of address forms that Deborah and Joseph recently filed with the

the juveniles due to the confidentiality provisions in Welfare and Institutions Code section 827.9.

Second, HACSD presented a police report for an incident involving an arrest of Kyle Parrish in the driveway in front of the House for possession of a controlled substance (methamphetamine) on July 5, 2010. Although HACSD presented evidence of the arrest, it did not specifically rely on it to show drug-related criminal activity as a basis for terminating Zizzo's Section 8 benefits. Instead, HACSD relied on Joseph's arrest.

4

post office, as Glouden had requested, but which did not provide a new *residence* address for Deborah or Joseph. Instead, Deborah changed her address to a business address, and Joseph changed his address to a post office box.

On September 28, 2010, Glouden gave Zizzo notice that HACSD was terminating her Section 8 benefits effective October 31, 2010. The reasons given were (1) drug-related criminal activity, in that Joseph was arrested at the House for being under the influence of a controlled substance;[4] and (2) unauthorized persons residing in the House, as Joseph and Deborah were staying at the House and using it as their residence address.

Zizzo requested an informal hearing to challenge the decision to terminate her Section 8 benefits. A hearing was held before hearing officer Anthony S. Deutsch on November 17, 2010. Both HACSD and Zizzo were represented by counsel. Several witnesses testified at the hearing.

Glouden testified about her conversations with Zizzo and presented the documentary evidence described above showing the House as the address on Deborah and Joseph's DMV records and Joseph's probation records. Glouden also described her visit to the House on the morning of August 18, 2010, when Joseph was sleeping there.

The other witness called by HACSD was Arthur Doherty III, a San Diego Police Department officer who lives across the street from the House. Counsel for Zizzo

---

[4] As clarified at the administrative hearing, the notice of termination erroneously stated that Joseph had been arrested on August 11, 2010 — which is the date of the police report — instead of August 10, 2010, which was the date of the arrest described in the police report.

5

objected to Doherty being called to testify because HACSD had not listed him as a witness prior to the hearing. On the suggestion of counsel for HACSD, the hearing officer asked whether counsel for Zizzo wanted the hearing to be continued to another day because of the lack of notice of Doherty's testimony. Counsel for Zizzo declined the continuance.

According to Doherty's testimony, Joseph told him in January 2010 that he lived at the House. Doherty further testified that in August 2010, Zizzo told him that Joseph lived in the House and asked for Doherty's help in getting Joseph off of the property because Joseph was selling drugs there. Doherty also testified that he often saw Deborah's vehicle at the House early in the morning and parked in the garage at night.

Zizzo introduced the testimony of Deborah, her son Adrian, and herself.

Deborah testified that she lives with a different daughter, but acknowledged that she had stayed at the House two to three times a week since May 2010. Deborah was not sure if she had stayed at the House more than 30 days over the last year. Deborah also testified that she never gave the House as an address to the DMV and was surprised to see that address on her DMV records. She also testified that Joseph did not live at the House.

Zizzo's son, Adrian, testified that he was at the House on August 10, 2010, when Joseph was arrested, and he observed the police "doing a bunch of drug tests" on Joseph. Adrian stated that neither Joseph nor Deborah lived at the House.

Among other things, Zizzo testified that neither Deborah nor Joseph reside at the House, but they stay there occasionally. Zizzo denied ever telling Doherty that Joseph

6

lived at the House or asking Doherty for assistance dealing with Joseph's drug-related activities.

At the end of the hearing, the hearing officer asked counsel whether they had ample opportunity to present their case and ask all relevant questions. Neither counsel raised any objection.

The hearing officer issued a thorough and detailed 13-page written decision on December 1, 2010, upholding the termination of Zizzo's Section 8 benefits. The hearing officer concluded that HACSD established by a preponderance of the evidence that Zizzo's participation in the Section 8 program should be terminated because Zizzo "(1) engaged in drug-related criminal activity which includes criminal [activity] by a family member or guest because Joseph Zizzo was arrested at the [House] for being under the influence of a controlled substance, and (2) violated her family obligations by allowing unauthorized persons, Joseph Zizzo and Deborah Zizzo, to reside with her and allowing unauthorized persons, Joseph Zizzo and Deborah Zizzo, staying in her unit to use her address as their residence address."

In March 2011, Zizzo filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) against the HACSD, Glouden, HACSD director David Estrella, and hearing officer Deutsch.[5] Zizzo sought an order requiring HACSD to set aside the

---

5    In her petition, Zizzo specifically proceeded against an entity she described as "the public Housing Authority" by filing a petition with a caption identifying among the respondents "Housing Authority of the County of San Diego, County of San Diego Department of Housing and Community Development." To the extent Zizzo intended to sue two separate entities (HACSD and County of San Diego Department of Housing and

7

termination of her Section 8 benefits. The petition alleged procedural unfairness in the administrative hearing and contended that the evidence at the hearing did not support the hearing officer's decision.

The parties submitted briefing on the petition to the trial court. Zizzo's briefing included a request for judicial notice containing several documents not presented at the administrative hearing, as well as a lodgment of non-California authorities, all of which the trial court declined to consider. Zizzo attempted to file a late reply brief in the trial court, which the trial court also declined to consider.

The trial court denied Zizzo's petition for writ of mandate. Applying its independent judgment to the evidence in the administrative record, the trial court explained at length that the hearing officer's decision was supported by the weight of the evidence and rejected Zizzo's claims of procedural unfairness. Zizzo appeals from the judgment.

II

DISCUSSION

A.    *Zizzo's Challenges to the Trial Court's Procedural Rulings*

Zizzo focuses a significant portion of her appellate brief on the trial court's refusal to consider (1) her reply brief; (2) her request for judicial notice; (3) documents purportedly rejected by the administrative hearing officer; and (4) the lodgment of non-California authorities. We consider those issues in turn.

_____

Community Development), there was no substantive distinction between those entities made during the litigation of this matter, and our reference to HACSD in the procedural history of this litigation includes both entities.

8

1.    *Reply Brief*

We first examine whether the trial court improperly refused to consider Zizzo's late-filed reply brief.

We apply an abuse of discretion standard in reviewing the trial court's refusal to consider late-filed briefing.  (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765.) "A trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission."  (*Bozzi*, at p. 765.)

The trial court explained that it was refusing to consider Zizzo's reply brief because it was filed beyond the deadline[6] and was served by fax without a stipulation to fax service, and because Zizzo's moving papers had also been filed one week late.  The reason given by Zizzo's counsel for the late filing of the reply brief was that "I was moving my offices and the time got away from us."  In declining to consider the late-filed reply brief, the trial court explained that "the problem is that we set these dates for a certain reason, and that is because we need the paperwork to review the paperwork."

The trial court was well within its discretion to decline to consider the reply brief. Counsel showed a pattern of disregarding filing deadlines and did not have a compelling excuse for the late filing, explaining instead that "time got away from us."  Based on

---

6    The filing deadline for the reply brief was November 1, but it the brief was not filed until November 5.

9

these facts, the trial court could reasonably decide that Zizzo failed to show good cause as required for a late-filing under rule 3.1300(d).

Further, to succeed in obtaining a reversal of the judgment based on the trial court's refusal to consider her reply brief, not only must Zizzo establish procedural error, which she has failed to do; she must establish prejudice. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289; Code Civ. Proc., § 475.) Here, Zizzo failed to establish the reasonable probability of a more favorable result had her reply brief been considered. Zizzo had a full opportunity to address the relevant issues in her opening brief and at the hearing in the trial court.

2. *Request for Judicial Notice*

Next, we consider whether the trial court erred in declining to consider the documents presented in Zizzo's request for judicial notice. "We review the trial court's ruling on the request for judicial notice for abuse of discretion." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264.) Further, to the extent Zizzo's request for judicial notice attempts to augment the administrative record, we review the trial court's ruling on a motion to augment the administrative record for abuse of discretion. (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1143 (*Evans*); *Armondo v. Department of Motor Vehicles* (1993) 15 Cal.App.4th 1174, 1180.)

Zizzo sought judicial notice of the following documents: (1) excerpted pages from HACSD's Administrative Plan for the Section 8 Housing Choice Voucher Program; (2) a print-out from the Web site of the National Conflict Resolution Center listing government training clients; (3) a page from HACSD's Family Handbook for the Section 8 program;

10

(4) a letter from an attorney at the office of the San Diego County Primary Public Defender to the director of HACSD on the procedure for obtaining police reports concerning juveniles; (5) a print-out from the Web site of the San Diego County Sheriff's Department concerning the procedure for requesting a crime, arrest or accident report; and (6) a vehicle registration renewal notice from the DMV addressed to Deborah at an address in Fallbrook in 2009. There is no indication that any of the documents were presented at the administrative hearing. HACSD objected to Zizzo's request to take judicial notice.

"A fundamental rule of administrative law is that a court's review is confined to an examination of the record before the administrative agency at the time it takes the action being challenged." (*Evans*, *supra*, 128 Cal.App.4th at p. 1144.) In a limited exception to this rule, Code of Civil Procedure section 1094.5, subdivision (e) provides that where, as here, the trial court exercises its independent judgment in reviewing an administrative decision and "finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, . . . the court may admit the evidence at the hearing on the writ . . . ." (*Ibid*.)

Here, the trial court determined that Zizzo's request for judicial notice did not satisfy these requirements because Zizzo did not attempt to establish that the documents at issue were either improperly excluded or could not have been produced.

The trial court's assessment of the situation was accurate and reasonable. Zizzo did not attempt to satisfy the requirements of Code of Civil Procedure section 1094.5,

11

subdivision (e) by showing that the documents could not have been produced or were wrongly excluded. Indeed, instead of citing Code of Civil Procedure section 1094.5, subdivision (e), the only specific statutory ground for Zizzo's request for judicial notice was Evidence Code section 452, subdivision (d), which permits a court to take judicial notice of court records. However, none of the documents presented by Zizzo were court records. The trial court was accordingly well within its discretion to deny the request for judicial notice.

3. *Documents Purportedly Not Admitted by the Administrative Hearing Officer*

Zizzo also contends that the trial court improperly rejected Zizzo's request to supplement the administrative record by considering two documents purportedly proffered by Zizzo at the hearing but purportedly not considered by the administrative hearing officer: (1) a declaration signed by Deborah; and (2) a request for information that Deborah submitted to the DMV to investigate how her address got changed to the House address.

Applying Code of Civil Procedure section 1094.5, subdivision (e), the trial court concluded that the administrative record should not be augmented with those exhibits because they were not improperly excluded by the administrative hearing officer. As we will explain, the trial court was within its discretion to make that decision.

First, because Deborah testified at the administrative hearing, the trial court was within its discretion to conclude that the hearing officer properly excluded Deborah's declaration. The hearing officer could reasonably conclude that Deborah's testimony was

12

preferable to her declaration, as it was live and subject to cross-examination. Indeed, Deborah ended up testifying at length about the subjects in her declaration, and Zizzo has not explained why her case would have benefitted from the admission of Deborah's declaration when Deborah testified in person.

Second, with respect to the form that Deborah filed with the DMV requesting information about her address change, we find no indication in the administrative record that Zizzo ever proffered that document at the administrative hearing. The document was mentioned by Deborah during her testimony, but Zizzo has not cited to any part of the administrative hearing transcript where that document was offered by Zizzo as part of the administrative record or rejected by the hearing officer. Further, because Deborah testified about the request for information during her testimony, even if the document had been improperly excluded, there was no prejudice to Zizzo in not being able to have the document admitted into evidence at the hearing.

4.      *Lodgment of Non-California Authorities*

Finally, Zizzo contends that the trial court erred in not considering the non-California authorities that she lodged with the court. Although the trial court did not give a reason for its decision to reject the non-California authorities, that decision was reasonable. The non-California authorities were two cases from Minnesota appellate courts (*Liffrig v. Independent School Dist. No. 442* (Minn. 1980) 292 N.W.2d 726 (*Liffrig*); *Dean v. Pelton* (Minn.Ct.App. 1989) 437 N.W.2d 762 (*Dean*)); one case from a Minnesota federal district court (*Garthus v. Secretary of Health and Human Services* (D.Minn. 1993) 847 F.Supp. 675 (*Garthus*)); and one case from the federal Eighth Circuit

13

Court of Appeals (*Cline v. Sullivan* (8th Cir. 1991) 939 F.2d 560 (*Cline*)). None of the cases concern Section 8 benefits. Instead, the cases arise in various unrelated contexts,[7] and three of them are cited in Zizzo's trial court briefing about the responsibility of administrative hearing officers to consider the evidence before them and make findings of fact. One of the cases — *Liffrig* — is not cited in Zizzo's trial court briefing at all. Zizzo could have cited California authorities on the same subject, which would have had precedential value in the trial court, but she inexplicably failed to do so.[8] As Zizzo provided no reasonable explanation for her decision to cite case law from Minnesota and the Eighth Circuit concerning the duties of administrative hearing officers, and the case law has no precedential value in Zizzo's case (*US Ecology, Inc. v. State* (2005) 129 Cal.App.4th 887, 905), the trial court was well within its discretion to decline to consider it.

B.     *Substantial Evidence Supports the Trial Court's Decision*

We next consider Zizzo's substantive challenge to trial court's ruling denying the petition for writ of administrative mandamus.

---

[7]     *Liffrig*, *supra*, 292 N.W.2d 726, is about a school board's termination of a school principal. *Dean*, *supra*, 437 N.W.2d 762 is about a trial court order modifying child support. *Garthus*, *supra*, 847 F.Supp. 675 is about the denial of disability insurance benefits. *Cline*, *supra*, 939 F.2d 560 is about the denial of supplemental Social Security benefits.

[8]     We note also that Zizzo's briefing in the trial court cited two more Minnesota authorities, but Zizzo did not attach those cases to her lodgment of non-California authorities.

14

" 'Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved. [Citation.] If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. [Citations.] The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings. [Citations.] If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence.' " (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 926-927 (*Saraswati*).) The continued receipt of Section 8 benefits is a fundamental vested right. (*Frink v. Prod* (1982) 31 Cal.3d 166, 171 ["In administrative mandamus actions to review decisions *terminating* welfare assistance, the trial court exercises its independent judgment on the evidence."].) Accordingly, the trial court conducted an independent review.

Our review on appeal is more limited. "When a trial court has applied an independent judgment standard of review of an administrative decision, 'an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence.' " (*Saraswati*, *supra*, 202 Cal.App.4th at p. 926, fn. 7.)

15

Here, as we will explain, substantial evidence supports the trial court's finding that Zizzo violated the family obligations, which justified HACSD's termination of Zizzo's Section 8 benefits.

As an initial matter, we note that a central focus of Zizzo's argument is that the trial court disregarded the evidence that she views as important and compelling. Zizzo contends that the record contains evidence showing that both Doherty and Glouden were biased against her. She also contends that the trial court should have credited the claim of Zizzo's witnesses that Deborah and Joseph did not live with her, and that the trial court should have resolved conflicts in the evidence by finding in her favor. We reject all of these arguments because they misapprehend the role of the trial court in its independent review of the record. The trial court was required to conduct an independent review of the entire record, to exercise its independent judgment on the evidence, and to weigh the evidence to determine whether it supports the administrative findings. (*Saraswati*, *supra*, 202 Cal.App.4th at pp. 926-927.) "[A]n exercise of independent judgment *does* permit (indeed, it requires) the trial court to reweigh the evidence by examining the credibility of witnesses." (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658); see also *Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 408 ["The trial court was permitted to draw its own reasonable inferences from the evidence and make its own credibility determinations."].) " 'Where the evidence supports more than one reasonable inference, we are not at liberty to substitute our deductions for those of the trial court.' " (*Candari*, at p. 408.) Here, the trial court extensively reviewed the evidence and expressly determined that Zizzo was not a credible witness. Although

16

Zizzo takes issue with these determinations, it is not our role to second guess the trial court's credibility determinations or its decision on how to resolve conflicts in the evidence.[9]

We now turn to a discussion of whether substantial evidence supports the trial court's decision.

In support of its finding that Joseph was residing in the House, the trial court cited the fact that (1) Joseph was arrested at the House; (2) Joseph used the House's address at the DMV and with the probation department; and (3) Doherty testified that Zizzo said she had to get Joseph out of the house.[10]  Those facts are supported by the administrative record and reasonably support a finding that Joseph was residing in the House. Therefore, the trial court's decision that Zizzo violated the family obligations by allowing an unauthorized person to reside in the House is supported by substantial evidence.

The trial court's conclusion that Zizzo violated the prohibition on a resident of the House engaging in drug-related criminal activity is also supported by substantial evidence.  As we have explained, the evidence shows that Joseph was a resident of the

---

[9]     Further, although Zizzo spends much of her briefing contending that Doherty and Glouden were biased against her and unjustly framed her, most of Zizzo's discussion on that topic is not supported by the evidence in the record.  Instead, in support of her claims that Doherty and Glouden unfairly targeted her, Zizzo relies solely on her own *allegations* in the petition for writ of mandamus or her *argument* in the briefs she filed in the trial court rather than to any *evidence* presented during the administrative hearing.

[10]     Although the hearing officer concluded that *both* Deborah and Joseph were improperly residing in the House, the trial court limited its discussion to the evidence supporting the hearing officer's findings regarding Joseph's unauthorized residence in the House.

17

House, and police records show that Joseph was arrested on August 10, 2010, at the House for being under the influence of a controlled substance, which constitutes drug-related criminal activity.[11]  Further, Doherty testified that Zizzo told him that Joseph was selling drugs from the House.  The trial court was entitled to credit Doherty's testimony and reject Zizzo's claim that no such conversation had occurred.[12]

C.    *Zizzo's Complaint About the Hearing Officer's Procedural Rulings*

Zizzo's final focus on appeal is the claim that the hearing officer committed several instances of procedural error that violated her right to receive a fair trial.  (Code Civ. Proc., § 1094.5, subd. (b) [one issue cognizable in a petition for administrative mandamus is "whether there was a fair trial"].)

---

[11]    Zizzo contends that the trial court improperly ignored the testimony of Zizzo's son, Adrian, who Zizzo claims to have testified that "Joseph was not under the influence when he was arrested and that he was arrested despite passing multiple tests administered by the arresting officer."  Zizzo does not correctly describe Adrian's testimony, as Adrian did not state that Joseph was not under the influence or that Joseph passed any tests administered by the police.  In support of this incorrect assertion about Adrian's testimony, Zizzo cites to an incorrect assertion in her trial court brief rather than to the administrative hearing transcript.

[12]    Zizzo also contends that the trial court's decision should be reversed because HACSD did not consider "mitigating circumstances" in deciding whether to terminate her Section 8 benefits.  According to Zizzo, the mitigating circumstances were that she had no prior rule violations in the Section 8 program and that Doherty purportedly harassed and bullied her.  This argument fails because there is no legal requirement that HACSD consider mitigating circumstances in terminating Section 8 benefits.  As the trial court found, the evidence supported HACSD's decision to terminate Zizzo's benefits because Zizzo failed to comply with the family obligations.

18

1.      *Arrest Records*

Zizzo's first complaint about the hearing officer's handling of the administrative hearing is that he improperly allowed HACSD to submit police records relating to drug activity at the House.  Specifically, Zizzo claims (1) that the arrest records relating to juveniles were protected by the confidentiality provisions of Welfare and Institutions Code section 827.9; and (2) the arrest records of Joseph and of Kyle Parrish should not have been admitted because those individuals were not given notice that their arrest records would be used in the administrative hearing.  As we will explain, the trial court properly rejected these allegations of procedural impropriety.

As the trial court pointed out, Zizzo's complaint about the hearing officer's treatment of the juvenile arrest records is baseless because the hearing officer *sustained* Zizzo's objection to the consideration of those records and specifically stated in his decision that he was not considering the juvenile arrest records due to the confidentiality provisions of Welfare and Institutions Code section 827.9.

Zizzo's contention that the adult arrest records should not be considered is premised on a federal regulation providing that when a housing authority "proposes to terminate assistance for criminal activity as shown by a criminal record, the [housing authority] must notify the household of the proposed action to be based on the information and must provide the subject of the record and the tenant with a copy of the criminal record."  (24 C.F.R. § 982.553(d)(2).)  Zizzo contends that although she was given copies of the arrest records, the subjects of the arrest records (Joseph and Parrish), did not receive copies.  The trial court rejected this argument on two grounds:  (1) Zizzo

19

did not object to consideration of the arrest records based on a violation of the federal regulation; and (2) Zizzo did not support her argument with competent evidence.

The trial court's resolution of the issue is well-founded. We find no indication in the administrative record that Zizzo objected to the admission of Joseph's and Parrish's arrest records based on violation of the federal regulation. Instead, the only objection that Zizzo asserted was to Joseph's arrest record, based on relevancy. As Zizzo did not object based on the federal regulation, she has no basis for contending that the hearing officer failed to afford her a fair trial by failing to exclude the arrest records on that basis. (Cf. Evid. Code, § 353, subd. (a) [court may reverse for erroneous admission of evidence only if the party objected on the specific ground now asserted on appeal].) Moreover, as the trial court observed, Zizzo submitted no evidence to show that HACSD failed to provide Joseph and Parrish with copies of the arrest records. Indeed, because Zizzo did not object during the administrative hearing based on the federal regulation, she presented no evidence presented at the hearing concerning HACSD's purported non-compliance with that regulation.

2.    *Allowing Glouden and Doherty to Testify*

Zizzo contends that she was not afforded a fair hearing because Glouden and Doherty were permitted to testify even though HACSD did not list them as witnesses prior to the hearing.

In arguing that witnesses who were not previously identified by HACSD should not have been permitted to testify, Zizzo relies on the notice of informal hearing that she received from HACSD on October 27, 2010. That notice informed Zizzo that "[y]ou will

20

be provided with the names of any witnesses that the Housing Authority anticipates calling to the hearing to testify at least 7 days prior to the hearing" (emphasis omitted), and stated that Zizzo also was required to identify her own witnesses seven days before the hearing.

Regarding Glouden's testimony, as the trial court pointed out, Zizzo's claim of procedural unfairness is without merit because Zizzo did not object to Glouden's testimony at the hearing. Zizzo cannot complain about the admission of testimony that she did not seek to exclude.

As to Doherty's testimony, Zizzo did object at the hearing to the admission of Doherty's testimony on the grounds she asserts here. However, as the trial court pointed out, Zizzo's claim of procedural unfairness fails because both the hearing officer and counsel for HACSD responded to Zizzo's objection to Doherty's testimony by specifically giving Zizzo the option to continue the hearing to a future date. Zizzo declined the offer and decided to proceed.

3.      *Entrapment Claim Regarding Change of Address Forms*

Zizzo claims that she was "entrapped" by HACSD into creating evidence to be used against her, and that evidence accordingly should not have been admitted at the administrative hearing. Specifically, Zizzo claims that Glouden entrapped her by requesting that she have Deborah and Joseph file change of address forms forwarding mail to their current residence to establish they weren't residing at the House. Zizzo apparently believes that she was "entrapped" because the hearing officer relied on the

21

change of address forms to conclude that Deborah and Joseph had been residing at the House prior to filing the forms.

We reject Zizzo's claim of entrapment for two reasons. First, Zizzo did not object to the admission of the change of address forms at the hearing. Therefore, she has no reasonable ground to complain that the hearing officer improperly admitted them into evidence. Second, the premise of Zizzo's argument is faulty because the hearing officer's conclusion that Deborah and Joseph resided at the House was not based on the fact that they filed the change of address forms. HACSD did not take the position that filing the change of address forms constituted an admission by Deborah and Joseph that they had been residing at the House. Indeed, Glouden's testimony at the hearing established that Zizzo obtained the change of address forms only because Glouden requested that she do so and not because Deborah and Joseph admitted that they resided at the House.[13]

4.      *Other Purported Conflicts/Improper Conduct by Hearing Officer*

Zizzo claims that "[t]here was . . . an improper ex parte conference between [HACSD's] attorney and the hearing officer behind closed doors immediately prior the hearing." We reject this argument because Zizzo cites no evidentiary support for it. Instead, Zizzo refers only to an argument in her trial court briefing, which, in turn, also fails to cite any evidentiary support.

_____

[13]      As explained by Glouden, the significance to her of the change of address forms was that Deborah and Joseph were not able to specify on those forms another *residence* where they claimed to be living, but instead gave the forwarding address of a post office box and a business.

22

Zizzo also contends that the hearing officer had a conflict of interest because he was purportedly associated with the National Conflict Resolution Center, which Zizzo claims to have some connection to HACSD. As the trial court pointed out, there is no evidence in the record to support the factual basis for Zizzo's argument.[14] We reject Zizzo's argument on that basis.

DISPOSITION

The judgment is affirmed.

_____<br>IRION, J.

WE CONCUR:

_____
NARES, Acting P. J.

_____
AARON, J.

---

[14] One of the items attached to Zizzo's request for judicial notice is apparently related to Zizzo's claim that the hearing officer had a conflict of interest. Specifically, Zizzo requested judicial notice of a page from the National Conflict Resolution Center's Web site listing "San Diego Housing Commission" as a "government training client." As we have explained, the trial court properly declined to take judicial notice of that document. However, even if that document was a part of the record, it would not establish any conflict of interest. Among other things, the most fundamental factual predicate for Zizzo's argument is lacking because she has not established any connection between the hearing officer and the National Conflict Resolution Center.

23