Filed 2/26/21 Zuleta v. Housing and Community etc. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LUIS ZULETA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> HOUSING AND COMMUNITY INVESTMENT DEPARTMENT OF LOS ANGELES et al., <br><br> Defendants and Respondents; <br><br> ELIZA KIM et al., <br><br> Real Parties in Interest and Respondents. | B302939 <br><br> (Los Angeles County Super. Ct. No. BS175319) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Los Angeles Center for Community Law and Action, Noah Grynberg, Tyler Anderson, Gina Hong, and Sarah Walkowicz for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus, Assisting City Attorney, Blithe S. Bock, Managing Assistant City Attorney, Matthew A. Scherb and Shaun Dabby Jacobs, Deputy City Attorneys for Defendants and Respondents.

No appearance for Real Parties in Interest and Respondents.

––––––––––––––––––––––––

Eliza Kim and Michael Marzouk own separate residential rental properties in Los Angeles.  Luis Zuleta and Jose Luis Moreno Rios are tenants of Kim.  Juan De Dios Garcia is a tenant of Marzouk.

Kim and Marzouk separately applied to the Los Angeles Housing and Community Investment Department (the Department) for a "just and reasonable" increase of the rents they may charge their tenants.  Department hearing officers granted the applications in part and their decisions were approved by an appeals board of the Los Angeles Rent Adjustment Commission (the Commission).

Zuleta, Rios, and Garcia filed a petition for writ of administrative mandamus in the superior court challenging the Department's and the Commission's rulings.  In November 2019, the court denied the petition.  This appeal followed.

Zuleta and Rios contend that the Department and the Commission erroneously determined that Kim's "base year" is 1984 for purposes of determining whether Kim is eligible for a rent increase and the Commission failed to account for income Kim had received from short term rentals through Airbnb.  Garcia contends that the Department and the Commission erred in determining that Marzouk's base year is 2011.  We affirm.

2

## LEGAL AND REGULATORY BACKGROUND

The Rent Stabilization Ordinance of the City of Los Angeles (LARSO) regulates the ability of landlords to increase the rent charged to tenants. (L.A. Mun. Code, § 151.04, subd. (A).) A landlord may apply to the Department for a rent increase greater than that ordinarily permitted under the LARSO on the ground that the increase is necessary to provide the landlord with a "just and reasonable return" on the rental property. (L.A. Mun. Code, §§ 151.01, 151.07, subd. (B)(1); see *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 165 [rent control ordinance must provide landlords with a "just and reasonable return on their property"]; *Palos Verdes Shores Mobile Estates, Ltd. v. City of Los Angeles* (1983) 142 Cal.App.3d 362, 368 [LARSO upheld against constitutional challenge because it ensures " 'a just and reasonable return' " for landlords].)

The LARSO established the Commission, which has issued "Just and Reasonable Guidelines" (the Guidelines) for Department hearing officers to use in determining a just and reasonable return. (L.A. Mun. Code, § 151.03, subd. (A); L.A. Housing & Community Investment Dept., Rent Adjustment Commission, Just and Reasonable Guidelines (Sept. 1, 2005) § 240.00 et seq. (Guidelines).)

Under the Guidelines, the hearing officer calculates and compares "Net Operating Income" for the "Current Year" with the "Net Operating Income" for the "Base Year," adjusted for price inflation. (Guidelines, *supra*, §§ 242.05–243.03.) For our purposes, net operating income is, generally, the income received from dwelling units minus certain expenses, such as management and administrative expenses, maintenance expenses, taxes, insurance, and operating expenses such as electricity, water, sewer, and gas. (Guidelines, *supra*, §§ 240.00, 241.00–241.19.)

The "Current Year" is the most recent calendar or fiscal year prior to the date of the landlord's application.  (Guidelines, *supra*, § 240.00.)

The "Base Year shall be 1977 when the financial information for that year is available." (Guidelines, *supra*, § 242.01.)[1]  If the landlord did not own the property in 1977 and records for that year "are not available from a previous landlord, the present landlord may, when the unavailability of the 1977 records can be substantiated by clear and convincing evidence, substitute as a Base Year the first year following 1977 for which a previous landlord's records are available." (Guidelines, *supra*, § 243.02.)

If the current year net operating income is less than the inflation-adjusted base year net operating income, the landlord is eligible for a rent increase.  (Guidelines, *supra*, § 243.07.)  The increase is allocated equally among the rental units.  (Guidelines, *supra*, § 245.02.)

The Department must give notice of the landlord's application to the tenants and set an evidentiary hearing.  (L.A. Mun. Code, § 151.07, subd. (B)(3)(b) & (c); Guidelines, *supra*, §§ 247.01–247.05.)

_____

[1] The rationale for a 1977 base year is explained in the Guidelines:  "In most cases the automatic increases allowed by the [LARSO] and the property tax savings resulting from Proposition 13 provide sufficient additional operating income to landlords to maintain at least the same net operating income they experienced in 1977 adjusted by an inflation factor.  However[,] in some cases landlords may have incurred reasonable operating expenses which exceed the rent increases allowed by the [LARSO] and the tax savings resulting from Proposition 13.  Therefore, landlords who have had such reasonable increased operating expenses shall be able to maintain the same level of net operating income as they experienced in 1977, plus a Price Level Adjustment as determined by the [Commission] from time to time." (Guidelines, *supra*, § 240.03.)

4

The hearing officer must issue a "determination with written findings in support thereof," and may grant an application for a rent increase less than the amount requested. (L.A. Mun. Code, § 151.07, subd. (B)(3)(d); Guidelines, *supra*, § 247.09.)

The landlord or the tenant may appeal the hearing officer's decision to the Commission on the grounds that "there was an error or abuse of discretion by the hearing officer." (L.A. Mun. Code, § 151.07, subd. (B)(4)(a); see also Guidelines, *supra*, § 248.02.) The appellant may rely "on new, relevant information which was not submitted to the hearing officer at the time of the initial determination due to mistake, surprise, inadvertence, or excusable neglect, and which information would have affected the determination of the hearing officer if it had been submitted earlier." (L.A. Mun. Code, § 151.07, subd. (B)(4)(a); see also Guidelines, *supra*, § 248.02(C).) The appeals board may affirm, modify, or reverse the decision of the hearing officer. (L.A. Mun. Code, § 151.07, subd. (B)(4)(d); Guidelines, *supra*, § 248.16.)

## FACTUAL AND PROCEDURAL SUMMARY

### A.    *Kim's Application for a Just and Reasonable Rent Increase*

Kim owns a four-unit apartment building in Los Angeles (the Kim property). In January 2016, Kim inherited the building from her father, who purchased it in July 2006 from Yasutake Takushi.

In 2016, Kim lived in one unit and rented the other three units. Zuleta and Rios rent one of the units. In October 2018, Zuleta and Rios were paying rent of $1,169.11 per month.

On October 18, 2017, Kim submitted to the Department an application for a just and reasonable rent increase, seeking an increase in the amount of $1,247.74 per unit per month. The

5

application is supported by a comparison of a "base year" of 1984 with a "current year" of 2016.

Kim explained that she selected 1984 as the base year based on the following. She found among her "father's boxes" a lease containing Takushi's address and then drove to the address. Takushi had died several years earlier and his son was then living in the residence. She explained to the son why she needed records regarding the property and "earnestly asked him to look for all papers," including "the earliest he could find." The son initially told her "there was no chance" of finding such records. Eventually, however, he provided Kim with a 1984 tax return schedule regarding the property and, a few days later, called Kim to tell her he had found an amended schedule for that tax year. Kim explained to the Department, "I could not get 1977 tax forms because I did not get that from Mr. Takushi's son. I did not want to bother him anymore."

Kim also supported the application with a property report and copies of deeds indicating that Takushi transferred the property to Kim's father in 2006, and Kim's father transferred the property to Kim in 2016. The report also indicates a transfer of the property in September 1982, presumably to Takushi.

On January 18, 2018, the Department staff issued its analysis and recommendation regarding Kim's application, which concluded that Kim was "not receiving a just and reasonable return on the property and is entitled to a monthly rent increase of $543.72 per unit per month." The staff's analysis was based on a base year of 1984 and a current year of 2016. The staff reduced the amount of the requested rent increase in part because it divided the total rent increase for the building among four units, including the unit Kim lived in, instead of the three units rented to tenants.

6

On February 9, 2018, a Department hearing officer held a hearing on Kim's application. Zuleta and Rios did not appear at the hearing personally or through counsel.

On March 23, 2018, the hearing officer issued his decision approving Kim's application as modified in accordance with the Department's recommendation. Regarding the base year determination, the hearing officer stated that Kim "provided documentary evidence to the Department indicating that 1984 was the first year for which a full record of income and expenses was available from the previous landlord. Accordingly, for this application the base year was deemed to be 1984 and the current year is 2016."

Zuleta and Rios filed an appeal to the Commission.

Zuleta and Rios moved to augment the record in the appeal to the Commission to include documents showing that Kim had rented the unit she had been living in to third parties through Airbnb and that she had converted a garage on the property and was living in that unit. They also submitted their declarations stating that the building has four apartment units and that Kim is living in a separate garage unit "so that she could rent out" the unit she had been living in.[2]

Prior to the hearing on the appeal, the Department submitted a report stating that Kim began renting her unit through Airbnb in March 2017 and, because the "current year" for purposes of the application is 2016, the Airbnb income is irrelevant.

At the hearing before the Commission, Zuleta and Rios, through counsel, argued, among other arguments, that the

---

[2] Our record does not disclose whether the Commission appeals board granted the motion to augment the record. Its ruling on the appeal, however, implies that it considered the additional evidence.

7

Department and the hearing officer improperly failed to consider the undisclosed Airbnb income. They also asserted that the rent increase for the building should be divided among five apartments, not four, because Kim was living in the converted garage unit on the property.

In a written decision issued on July 6, 2018, the Commission appeals board affirmed the hearing officer's decision to grant in part Kim's requested rent increase. The panel rejected the argument that the rent increase should be divided among five units because the alleged fifth unit was based on hearsay. The panel deemed evidence of Airbnb rental income to be immaterial because there was no evidence of such income in 2016. The panel concluded that there was "no reason to reverse the Hearing Officer's decision because there is insufficient evidence that the Hearing Officer abused [his] discretion or made an error."

### B. *Marzouk's Application for a Just and Reasonable Rent Increase*

In October 2017, Marzouk acquired a four-unit apartment building in Los Angeles. He rents three of the units and lives in the fourth. Garcia is one of Marzouk's tenants.

On November 14, 2017, Marzouk submitted an application to the Department for a "just and reasonable" increase in the rent. The Department determined that the application was incomplete and requested further information. Marzouk filed a new application on February 5, 2018, seeking increases of $1,153.59 per unit. At the time of the application, Garcia's rent was $645.30.

Marzouk's application was based on a base year of 2011 and a current year of 2017. He initially supported the 2011 base year claim with evidence that he acquired the property from his father or an entity (Mar Mena Properties, LLC) in which his father is a partner or principal. His father submitted a statement that his

8

company had purchased the property in 2009 "as a foreclosure," and that the foreclosing bank did not provide him with any documents. According to Marzouk, his father "did not keep proper records for 2010 as it was his first year owning real estate," and his father "could only provide [him] information dating back to 2011." In a subsequent writing, Marzouk stated that there is no data available prior to 2011 "due to multiple foreclosures/short sales and not being able to track down the current addresses of previous owners."

The Department staff issued a report, which accepted 2011 as the base year and recommended that Marzouk be granted a rent increase of $364.55 per unit per month.

Prior to the hearing on the application, Marzouk obtained a title report for the property and copies of deeds concerning the property. These documents showed that the property was owned by Karl and Louise Duus in 2001, who transferred the property that year to Mei and Effendi Fendi. In 2006, the Fendis deeded the property to Mariano Galvan, who transferred it to Marzouk's parents and uncle in 2009.

At the hearing before the Department hearing officer in June 2018, Marzouk testified that the only address he had for Galvan (the owner from 2006 to 2009) was the apartment building that is the subject of this proceeding, and Marzouk "couldn't track him down." Marzouk obtained an address for the Fendis (the owners from 2001 to 2006), and mailed them a letter, which was returned to him undelivered. He then drove to the address in South Pasadena, but no one answered his knock on the door. A neighbor on that street informed him that the Fendis no longer lived at that address.

Marzouk further testified that, although his parents and uncle bought the property in August 2009, they "didn't have the books in order" and did not prepare the tax form used for reporting

9

rental real estate income and loss in 2010. 2011 was the first year for which he had such a form.

The hearing officer issued his decision on July 6, 2018. He found that "the previous owners' records were available beginning in 2011. Accordingly, the base year was deemed to be 2011 because it was the earliest possible year of record that could be secured from the previous owner." The hearing officer agreed with the Department's recommendation and approved Marzouk's application as modified.

Garcia appealed to the Commission.

At the hearing before the Commission appeals board in September 2018, a Department representative explained that although the Department "request[s] clear and convincing evidence, . . . it's impossible for owners to [prove] a negative. Therefore, we have to go with evidence submitted to show that they've made their best effort. And having documentation of the title report going to the last known address of a previous owner that wasn't listed as the property address and taking a picture that he actually went there, I don't see how much else he could have done."

Upon further inquiry from the appeals board panel, Marzouk testified that he had found online the obituaries of the Duuses, who owned the property from 1954 until they transferred it to the Fendis in 2001. According to the title company he retained to prepare the title report, "there was no address on record" for the Duuses. The Department representative added: "I don't see what else [Marzouk] could have done beyond spending thousands of dollars for a private investigator to investigate records that don't exist because the county said they don't have them."

On September 26, 2018, the Commission's appeals board affirmed the hearing officer's decision, stating that "there was

insufficient evidence that the Hearing Officer abused [his] discretion or made an error."

### C.    *Proceedings in the Superior Court*

In October 2018, Zuleta, Rios, and Garcia filed a petition for writ of administrative mandamus, among other relief, against the Department and the Commission.  The court severed the individual's claims for trial, but maintained a single case number and issued a single judgment denying the petitions.  Zuleta, Rios, and Garcia appealed.

## DISCUSSION

### A.    *Standards of Review*

When, as here, the underlying petition for writ of administrative mandamus does not involve fundamental rights, our review of a denial of the petition is identical to the trial court's review of the administrative ruling.  (*Hoag Memorial Hospital Presbyterian v. Kent* (2019) 36 Cal.App.5th 413, 421.)  We review the record of the administrative proceeding to determine whether the agency "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by substantial evidence."  (Code Civ. Proc., § 1094.5, subd. (b).)  We review legal issues and conclusions of law de novo.  (*Hoag Memorial Hospital Presbyterian*, *supra*, at p. 421.)

**B.** ***Zuleta and Rios's Challenge to Kim's Just and Reasonable Rental Increase***

1. *Clear and Convincing Standard Regarding Unavailable Documents in Determining the 1984 Base Year*

Zuleta and Rios contend that the hearing officer erred by failing to properly apply a clear and convincing evidence standard to Kim's evidence that pre-1984 financial records concerning the property were unavailable to her. We disagree.

Under Guidelines, *supra*, section 243.02, a landlord who did not own the property in 1977 may "substitute as a Base Year the first year following 1977 for which a previous landlord's records are available" "when the unavailability of the 1977 records can be substantiated by clear and convincing evidence."

A clear and convincing evidence standard of proof "demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable doubt. This intermediate standard 'requires a finding of high probability.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.) Where clear and convincing proof is required, the party bearing that burden of proof " 'must do more than show that the facts are probably true' "; he or she must convince the trier of fact " 'that it is *highly probable* that the facts . . . are true.' " (*Id.* at pp. 998–999.)

In the context in which that standard is to be applied here, the question for the hearing officer is whether Kim has shown that it is highly probable that the records necessary to calculate the net operating income of the property for years between 1977 and 1984 are unavailable to her.

Zuleta and Rios contend that the hearing officer failed to apply the clear and convincing standard. They point out correctly that the hearing officer did not explicitly refer to this standard in

12

his written ruling.  He stated that Kim "provided documentary evidence to the Department indicating that 1984 was the first year for which a full record of income and expenses was available from the previous landlord.  Accordingly, for this application the base year was deemed to be 1984 and the current year is 2016."

Although the hearing officer did not explicitly recite the clear and convincing standard in his ruling, he did introduce his discussion of the issue by referring to the applicability of section 243.02 of the Guidelines, which mandates the clear and convincing evidence standard.  The reference to that guideline implies that the hearing officer applied that standard.  Further, the hearing officer did not indicate that he had applied a different standard of proof and neither the Guidelines nor the LARSO require the hearing officer to recite the clear and convincing standard in the officer's ruling.  In the absence of a contrary indication in the record, we presume that the hearing officer regularly performed his duty (see Evid. Code, § 664) and that he " 'applied the correct standard of proof.' [Citation.]"  (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 929.)  We therefore reject the argument that the hearing officer failed to apply the correct standard.

Zuleta and Rios further assert that the hearing officer incorrectly applied a clear and convincing evidence standard to them.  They refer to the following statements in the hearing officer's decision:  "After due consideration of the testimony and documentation submitted by all parties, the Hearing Officer hereby finds that the income and expenses claimed by the owners for the base and current years are supported by clear and convincing evidence.  Although the tenants and their attorney expressed some subjective concerns about the amount of the proposed rent increase and voiced their objections to same, they failed to proffer any clear and convincing evidence to rebut the owner's claims or demonstrate

13

that the income or expenses reported in the application lacked credibility in any way." These statements relate solely to issues concerning Kim's evidence of income and expenses, not to her selection of the base year. Zuleta and Rios have not, however, challenged on appeal the hearing officer's determination regarding income and expenses (other than the Airbnb income discussed below) and nothing in the hearing officer's ruling suggests that he required the tenants to make any showing, by clear and convincing evidence or otherwise, as to the base year issue.

Zuleta and Rios next contend that, even if the hearing officer applied the clear and convincing standard, he did so erroneously.[3] The challenge is to the sufficiency of the evidence supporting the hearing officer's implied finding. Our Supreme Court has recently clarified that, "when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B., supra,* 9 Cal.5th at p. 1005.)

Zuleta and Rios argue that the only evidence Kim presented to support her selection of 1984 as the base year is the tax form supplied by Takushi's son and her statement regarding her efforts to locate the son and her request that he provide her with "the earliest" records he could find. Because Takushi appears to have

---

[3] The Department and the Commission argue that Zuleta and Rios waived this argument by failing to raise it below. As Zuleta and Rios point out, however, they raised the issue in their motion to augment before the appeals board and the issue was addressed by the Department's representative, the appeals board panel, and counsel for Zuleta and Rios. We therefore reject the waiver argument.

14

owned the property since 1982, such evidence, Zuleta and Rios argue, "did not establish anything about the availability of financial records between 1977 and 1982, or even who owned the [Kim] [p]roperty between those dates."

Even in the absence of evidence that Kim attempted to locate the person who owned the property prior to Takushi, we cannot conclude that the hearing officer erred in determining, implicitly, that it was highly probable that earlier records would not be available to Kim. At the time of Kim's application, it had been 35 years since someone other than Kim, her father, and Takushi owned the property. That passage of time is itself a fact that weighs heavily on the probability that the necessary documents would never be available to Kim. In evaluating that probability, the hearing officer could reasonably consider that the former owner of the property or other custodian of the owner's records, if still living and locatable, had probably long since discarded any records concerning the rental income and operating expenses for the property. Even if the necessary records still exist and could be found, the likelihood that the owner or other custodian would decline to turn them over to Kim further reduces the probability of their availability to her. Kim would have no ability to compel production of the records and would need to resort, as she did in this case, to "earnestly ask[ing]" the former owner or custodian for such records. Although Kim was fortunate that Takushi's son was willing to search for and provide her with his father's records from 1984, the kindness of strangers cannot be assumed, particularly when that kindness involves turning over one's financial, property, or tax records.

We do not suggest that a landlord never needs to attempt to track down those who owned the property many years earlier. But here, the question is whether there was sufficient evidence, including the passage of 35 years, for the hearing officer to

reasonably conclude that it was highly probable that pre-1984 records were unavailable to Kim. For the foregoing reasons, we conclude that there was sufficient evidence.

### 2. *Failure to Adjust Current Year Income Based on Airbnb Income*

Zuleta and Rios contend that the appeals board erred by failing to adjust upward the current year's income by the income Kim received from Airbnb rentals. We reject the argument.

In determining whether Kim was eligible for a just and reasonable rent increase, the Guidelines direct the hearing officer to compare the base year net operating income with the current year net operating income. (Guidelines, *supra*, § 243.07.) The current year is defined as "[t]he most recent calendar or fiscal year prior to the date of the Just and Reasonable application." (Guidelines, *supra*, § 240.00.) Kim submitted her application in October 2017. The current year was therefore 2016.

The evidence Zuleta and Rios submitted regarding Kim's Airbnb rentals indicates that such rentals occurred in 2017. This is consistent with Kim's statement that she began Airbnb rentals in March 2017. Because only income received in 2016 is relevant to Kim's application, the evidence of 2017 Airbnb rental income is irrelevant.

Zuleta and Rios rely on Kim's testimony at the appeals board hearing where she stated: "I'm a full-time student at Los Angeles City College. I don't know how much time I have, but I'm trying to make the means—the mortgage means [*sic*]. That's all and I can't even remodify it because my income doesn't meet and I can't even lower the payments because I'm a student and nobody would talk to me. And I have records of people who try to help me. . . . After this, after we bought it I—I have so many things to do, but I'm very happy that I got up to here. Very grateful. I have no family,

no boyfriend. . . . It's like two, three bedrooms.  I mean, it's—and I knew this would take like six—five months and it did take six months and I couldn't meet the mortgage so I had Airbnb."

Zuleta and Rios argue that the last sentence of this testimony shows that Kim "turned to Airbnb" six months from the date she acquired the property in January 2016.  This statement is at best ambiguous about when Kim turned to Airbnb.  Thus, the appeals board was free to adopt an interpretation in favor of the evidence of Kim's unambiguous statement to Department personnel that she began using Airbnb in 2017.  We therefore reject the tenants' argument.

### C.    *Garcia's Challenge to Marzouk's Just and Reasonable Rental Increase*

Garcia contends that the hearing officer and appeals board erred in applying the clear and convincing evidence standard in determining that the base year for Marzouk's application is 2011.

In ruling on Marzouk's application, the hearing officer stated that "the previous owners' records were available beginning in 2011.  Accordingly, the base year was deemed to be 2011 because it was the earliest possible year of record that could be secured from the previous owner."  As with the ruling on Kim's application, the hearing officer referred to section 243.02 of the Guidelines, which requires the application of the clear and convincing standard, but failed to explicitly state that he was applying the clear and convincing standard to the question whether earlier property records were unavailable.  As we explained above, however, the failure to refer to that standard is not error and we presume that the hearing officer was aware of and applied the correct standard.

As discussed above, the clear and convincing evidence standard in this context requires Marzouk, as the proponent of the fact that financial records of the property prior to 2011 were

unavailable, to establish that the unavailability of such records is highly probable. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 998–999.) On review, we must determine whether there is substantial evidence in the record from which the hearing officer could have made that finding of high probability. (*Id.* at p. 1005.)

Here, Marzouk obtained the earliest records available from the prior owner—his father's company. He obtained from a title company a title report and copies of deeds reflecting ownership of the property since 1954. Through online research, he determined that the couple who owned the property until 2001, the Duuses, had passed away. Marzouk attempted to contact the couple that owned the property from 2001 to 2006, the Fendis, but learned that they had moved from the only address he had for them.

Garcia focuses his argument on the lack of evidence regarding Marzouk's efforts to locate Galvan, the individual who owned the property between the Fendis and Garcia's father's company. According to Garcia, Marzouk did no more than observe that Galvan listed the subject property as his address on the 2006 deed to the property and thereby concluded that he was unreachable. Marzouk did produce the deed to Galvan showing the subject property as Galvan's address, but Marzouk did not state that he stopped there. He explained in a writing in support of his application that he was "not . . . able to track down the current addresses of previous owners," and that he "attempted to reach out to the previous banks" but "they would not release the names of the previous owners nor contact information." He also testified before the hearing officer that he "couldn't track [Galvan] down." He later explained to the appeals board that he asked the city and his escrow agent how to contact prior owners and was advised to obtain a title report. He did so and used the information the report provided; but, "[w]ithout a phone number and an email address [he did not] know what other methods are really out there."

18

Although our record is not clear as to what, precisely, Marzouk did to "track down" Galvan, his statements imply some action beyond merely reading Galvan's deed. His attempt to "reach out to the previous banks," for example, implies that he contacted Galvan's lender or lenders, who would have been disclosed on deeds of trust identified in the title report Marzouk obtained. Together with the evidence of his efforts to locate the Fendis and the passing of the Duuses, the hearing officer could reasonably conclude that there was a high probability that financial records concerning the property earlier than 2011 were unavailable to Marzouk.

**DISPOSITION**

The judgment is affirmed.
NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur.


BENDIX, J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.